## ATHERTON *v.* WILLIAMS.

The statute of limitations applicable to suits upon contracts in writing, does not operate until the party has a right to apply to the proper tribunals for relief in the particular case.

Where one person executes a mortgage upon his own land, for the accommodation, and to secure the debt, of another person, and takes from the latter a bond conditioned that he "would pay and satisfy the mortgage, together with all interest and costs thereon, accrued, accruing, and to accrue, and, in every respect, save the mortgagor harmless, and without loss in the premises," and the latter fails to pay the mortgage debt, and suffers the mortgaged property to be sold to pay the same, and thereby lost to the mortgagor, the proper measure of damages to which the mortgagor is entitled is the value of the mortgaged property at the time it was sold.

APPEAL from the *Madison* Circuit Court.

DAVISON, J.—*Robert N. Williams,* who was the plaintiff, sued *Willis G. Atherton,* who was the defendant, upon a bond executed by said defendant, and one *Joel Blackledge,* to the plaintiff. The bond bears date June 1st, 1838, is in the penalty of two thousand dollars, and is conditioned thus:

"Whereas *Robert N. Williams* did, on the 24th of May, 1838, make and execute his certain mortgage, on the west half and the north-east quarter of the north-east quarter of section 33, town 20, north of range 7 east, and the south half of the north-east quarter of section 3, town 19, north of range 7 east, containing two hundred acres of land, to the State of *Indiana,* for the sum of five hundred dollars, payable five years after the date thereof, with eight per cent. per annum interest thereon, payable in advance, annually, at the Branch, at *Indianapolis,* of the State Bank of *Indiana,* which said mortgage was made and executed for the special benefit and use of the said *Willis G. Atherton* and *Joel Blackledge,* who drew and applied the avails thereof to their own use and purposes. Now, therefore, should they—the said

*Willis G. Atherton* and *Joel Blackledge*—pay and satisfy the above described mortgage, together with all interest and cost thereon, accrued, accruing, and to accrue, and in every respect save harmless, and without loss, the said *Williams*, in the premises, then the above obligation to be void; otherwise to be and remain in full force," etc.

The complaint shows that *Blackledge*, after the execution of the bond, and before commencement of this suit, departed this life. And, for breach of said condition, it is alleged that the defendant did not, nor did the said *Blackledge*, in his life-time, pay or satisfy any part of the mortgage, nor did they pay or satisfy any interest and costs that had accrued thereon. But, in consequence of their failure so to do, the real estate, so mortgaged by the plaintiff, was forfeited to the State, and afterward, on the 14th of November, 1845, was sold by the State for six hundred dollars, to one *Townsend Ryan*, to pay and satisfy the principal, interest, and costs that had accrued thereon. And further, it is averred, that said real estate was, at the time of the forfeiture and sale aforesaid, of the value of two thousand dollars. Damages are laid at three thousand dollars.

The issues were submitted to the Court, who found, for the plaintiff, one thousand four hundred and forty-nine dollars, and, over a motion for a new trial, rendered judgment, etc. The record contains the following agreement of facts: "The mortgage referred to in the complaint was executed on the 22d of May, 1838, was for the sum of five hundred dollars, and was upon the land described in the bond in suit. Said land was sold for the non-payment of interest due on the mortgage, for the years 1843, 1844, and 1845, and was bid in by the State, on the 14th of November, 1845, at a public sale of the same and other lands mortgaged to the sinking fund. After this, on the 1st of September, 1846, the sinking fund, by her commissioners, sold and conveyed all the land described in the mortgage to *Townsend Ryan*, for six hundred

and four dollars, and that the same was subsequently transferred to *John F. Brickley*, to whom a deed was executed." *Nineveh Berry*, a witness, testified that "the real estate described," etc., "was, at the time of the sale by the sinking fund officers, worth two thousand dollars." The following receipt was read in evidence on the trial:

"ANDERSTOWN, *March* 22, 1843.

"Received of *Joel Blackledge*, one note on *Thomas Bell*, dated August 9, 1842, due two months after date, for one dollar and thirty cents. Also an order on *Madison Webb* for money collected by him from *Hiram Newkirk*—supposed to amount to seventy-five dollars, with interest. Also an agreement of *R. N. Williams* to pay *Blackledge* sixty-five dollars, in cash notes on good solvent men of *Madison* county, on or before the 1st of March, 1842, amounting now, with interest, to sixty-nine dollars and sixty-two cents, which sums, when collected, I am to apply on the payment of a mortgage, by me executed to the sinking fund, for five hundred dollars, which was executed for the benefit of said *Blackledge* and *Atherton*. And also a balance on settlement of nine dollars and forty cents due from me to said *Blackledge*.

"R. N. WILLIAMS."

It was proved that the money on the *Bell* note, and the order on *Webb*, described in the receipt, were collected by said *Williams*, but not until after the sale of the land by the sinking fund officers. And further, it was proved that the complaint in this suit was filed February the 16th, 1859. This, with the bond sued on, was all the evidence, etc.

The causes for a new trial are thus assigned: 1. The evidence shows that the action is barred by the statute of limitations. 2. The finding is unsustained by the evidence. 3. The Court erred in fixing the measure of damages at the value of the land; it should have been the amount of money loaned, with interest. 4. Under the evidence, the plaintiff was only entitled to nominal damages.

There is nothing in the first assignment. The bond, it is true, was executed May the 24th, 1838, and the present suit was instituted February the 16th, 1859. Between these dates, more than twenty years, (the period of limitation, applicable to suits "upon contracts in writing,") had elapsed. 2 R. S., p. 76, sec. 211. But the rule is, that the statute of limitations does not operate until the party has a right to apply to the proper tribunals for relief. Angel on Lim., sec. 42. And here the proof is, that the cause of action relied on by the plaintiff did not accrue until the 1st of November, 1845, less than fourteen years prior to the commencement of the action.

Under the second assigned cause for a new trial, it is insisted, that the plaintiff himself was in default; that, by his receipt to *Blackledge,* he was to pay, on the loan, sixty-nine dollars and sixty cents; also, nine dollars and forty cents, making, in the aggregate, seventy-nine dollars, which was more than the interest for which the land was sold, and that the same was sold in consequence of his failure to pay. We do not so understand the evidence. The interest was payable annually, in advance, and the land was sold for a default in the payment of three years' interest, which, at eight per cent. per annum, on five hundred dollars, the sum stated in the mortgage, amounted to one hundred and twenty dollars; hence, a payment of the seventy-nine dollars would not have avoided the forfeiture. But the plaintiff, by the receipt, agreed to pay the sums therein stated, when collected, on the mortgage, not on the interest; and, in sequence, the defendant, notwithstanding the plaintiff's engagement, was bound, in order to avoid the forfeiture, to pay the interest annually, in advance. And it is even doubtful whether the stipulation in the receipt, to pay "when collected," does not relate alone to "the *Bell* note and the order on *Webb*," because the sixty-nine dollars and sixty cents was a sum the plaintiff had agreed to pay

*Blackledge,* in cash notes, and the nine dollars and forty cents was an amount due him, by the plaintiff, on settlement, and both of these amounts having been surrendered up to the plaintiff, at the date of the receipt, were, of course, not collectable, according to its terms. It seems to follow, that he was not, on account of these sums, liable to pay any amount on the mortgage.

The note and order, however, were collectable, and "when collected," the moneys arising therefrom were to be so paid; and the evidence shows that they were collected, but not until after the sale of the mortgaged premises by the sinking fund officers.

The next inquiry relates to the damages. The defendant's engagement was, that he "would pay and satisfy the mortgage, together with all interest and cost thereon, accrued, accruing, and to accrue, and, *in every respect,* save the plaintiff harmless, and without loss in the premises." And the facts are, that the defendant failed to pay the mortgage when it matured, or the interest thereon, as stipulated in the contract. The result was, the land was sold, and thereby became lost to the plaintiff. And it seems to us that that result was "the natural and proximate consequence" of the defendant's failure. It follows, the value of the land, at the time it was sold and became so lost to the plaintiff, is the correct measure of damages. Indeed, it may be reasonably supposed, that a failure to perform, resulting in the sale of the mortgaged property, was in contemplation of the parties at the time of the contract; and that, consequently, the intent of that contract has, in this instance, been fairly carried out by the ruling of the Circuit Court. Sedgwick on Damages, pp. 64, 65, 77.

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages and costs.

*Davis* and *March,* for the appellant.