## LYNCH ET AL., Ex'RS, *v.* JENNINGS, ADM'R.

SPECIFIC PERFORMANCE.—*Tender.*—Where a purchaser of real estate brings suit for the specific performance of an executory contract of sale, it is not necessary that he should make an unconditional tender of the purchase-money and pay the same into court. It is sufficient for him to tender the money on condition that a deed is made to him, and upon the refusal of the vendor to accept the money and perform his contract, the vendee may bring his action and show in the complaint such tender and refusal, and that he is ready, able, and prepared to pay whatever sum may be found due, upon a decree for a specific performance.

STATUTE OF LIMITATIONS.—*Demand.*—A. sued B. for the specific performance of a contract for the conveyance of real estate. In his complaint A. alleged a tender and refusal of the purchase-money, and brought the same into court, and it remained in the hands of the clerk. After years of litigation, a final decree was rendered in favor of A. The executors of B. then demanded said sum of money of the administrators of the clerk, who had died, and on their refusal to pay, suit was brought for its recovery. Answer, that more than six years had elapsed since the right of action accrued, prior to the commencement of suit.

*Held,* that the statute of limitations did not commence to run against the plaintiffs until after a demand upon the defendants for the return of the money.

PRACTICE.—*Special Finding.*—When a party desires to object to the conclusions of law upon a special finding by the court, he should except to such conclusions of law; a motion for judgment on the special finding in favor of the

party against whom the finding is made presents no question for review in the Supreme Court.

SAME.—*Motion.*—*Bill of Exceptions.*—Motions to strike out portions of pleadings, to reject pleadings, or to require the separation of the same into distinct paragraphs, are unavailing on appeal to the Supreme Court, unless incorporated into the record by bill of exceptions.

From the Putnam Common Pleas.

S. *Turman* and *J. Birch*, for appellants.

D. E. *Williamson* and A. *Daggy*, for appellee.

BUSKIRK, J.—We cannot so fully show what this suit was brought for as by copying the complaint in full, which is as follows:

"State of Indiana, Putnam Common Pleas Court, June term, 1867. John S. Jennings, administrator of the estate of Isaac Ash, deceased, v. John Lynch and Armilda R. McGinnis, executors of the last will and testament of Jacob McGinnis, deceased. Comes now the said John S. Jennings as administrator of the estate of Isaac Ash, deceased, and for amended and substituted complaint herein, says that in 1849 the said Ash contracted and sold to one Jacob Daggy a certain tract or parcel of land situated in said county. And the said Ash refusing to convey the same, the said Daggy then and there commenced his suit for the specific performance of the same against the said Ash; and for the purpose of carrying out his legal proceeding against the said Ash, then and there deposited in the circuit court of said county, where said suit was then pending, the purchase-money or consideration for said land, amounting to the sum of seven hundred and ninety-two dollars and seventy-five cents in gold, and then and there placed the same in the hands of Jacob McGinnis, who was then and there the clerk of said court and became the custodian of said money. And the plaintiff says that such proceedings were afterward had, that the said court by its order and decree vested the title of said land in the said Jacob Daggy, then and there leaving the purchase-money aforesaid in the custody aforesaid, the property of the said Ash. And the plaintiff further says

that afterward the said Ash departed this life, and letters of administration were duly granted on his estate to Oliver P. Ash, who, as such administrator, drew said seven hundred and ninety-two dollars and seventy-five cents out of the hands of the said McGinnis as a part of the assets in said estate. And the plaintiff further says that afterward the heirs of said Isaac Ash, deceased, prosecuted their writ of error to the Supreme Court of the State, for the purpose of reversing the decree of the Putnam Circuit Court in the matters of said land, and for the purpose of prosecuting said writ, the said plaintiff, as administrator *de bonis non* of the estate of said deceased, at the instance and request of said heirs, re-deposited the said money, seven hundred and and ninety-two dollars and seventy-five cents, with the said McGinnis, still remaining said clerk, and then and there took his receipt for the same, which is now made a part of this complaint by copy. And the plaintiff says that on said writ of error aforesaid, the Supreme Court of the the State reversed and set aside said decree of the Putnam Circuit Court, leaving the title to said lands in the said Ash's heirs. But the plaintiff charges that in the meantime, before the prosecution of said writ of error, the said Daggy had contracted and sold to divers persons parts and subdivisions of said lands so purchased of said Ash as aforesaid, and perfected the same by conveyances, etc., and held the possession of all said tract.

" And the plaintiff further says that afterward the heirs of said Ash, deceased, commenced their legal proceedings in the common pleas court of said county, against the said Jacob Daggy and others, for the purpose of settling all questions of title and rights of possession to said tract of land described in said first suit against said Ash, and to have partition of the same according to their respective legal rights, and such proceedings were thereupon had that partition was ordered, four-fifths to the heirs of said Ash, deceased, and one-fifth to the said Daggy. And the plaintiff further says that the said Daggy and others prayed and

took their appeal to the Supreme Court from the decree of the Putnam Common Pleas, and such proceedings were thereupon had that the Supreme Court reversed and set aside said decree, and declared the title to said lands involved in the said first and last litigation to be in the said Jacob Daggy and his assignees, by virtue of his purchase first above alleged and the decree of said Putnam Circuit Court thereon, with directions to dismiss the suit of said Ash's heirs, and to render final decree for the said Daggy and his assigns, then and there and thereby vesting and quieting the title to said lands in said Daggy and his assigns, a copy of which decree is filed, and divesting the heirs of the said Ash of all claim or title to said lands. And the plaintiff further says that during all the time aforesaid, the money so deposited by the said Jennings, as the administrator of the estate of the said Ash, remained in the hands of the said McGinnis, and equitably became the money of the estate of the said Ash, deceased; that it was the consideration-money for said lands, and as the lands were finally decreed to be in the said Daggy and his assigns, that he, as such administrator, should draw the money out of the hands of the said McGinnis, for the purpose of making the same assets to pay debts of said Ash. And he further says that said McGinnis died testate, and that John Lynch and Armilda R. McGinnis became executors of the estate of said deceased, and that said estate is yet pending in court, and that he demanded said money of said Lynch, who refused to pay the same. He makes said Daggy a party to this proceeding, and prays a judgment against the estate of said McGinnis for said sum of money, and for other proper relief."

The receipt referred to in and made a part of the complaint is as follows:

"Whereas Jacob Daggy instituted a suit in the Putnam Circuit Court against Isaac Ash, and paid into court for the use of said Ash seven hundred and ninety-two dollars and seventy-five cents, which was refused by said Ash in his lifetime, but was taken out by the administrator of said Ash,

without the consent of the heirs of said Ash, as is said; and whereas the said heirs have prosecuted the said action into the Supreme Court and directed the administrator *de bonis non* to re-deliver said sum to the clerk of the Putnam Circuit Court, to abide the event of that suit, and said administrator has this day deposited for the purpose aforesaid said sum of seven hundred and ninety-two dollars and seventy-five cents in my office, July 27th, 1855.

"JACOB McGINNIS,

"Clerk of the C. C. of Putnam County."

It appears by the return to a *certiorari*, that the above complaint was filed as a claim against the estate of Jacob McGinnis, deceased; and that such claim was placed on the appearance docket for allowance, and not being allowed, was transferred to the issue docket for trial. There was also filed with, and as constituting a part of the above complaint, a bill of particulars showing the nature of the claim. The claim was sworn to.

A demurrer was overruled to the complaint, and the appellants excepted.

The appellants then filed an answer consisting of seven paragraphs. The substance of the several paragraphs was as follows:

1. The general denial.

2. Payment by McGinnis to plaintiff.

3. That the money deposited by the plaintiff was the money of the heirs of said Ash, deceased; the names of the heirs are given; that the same was a special deposit made by said heirs, through and by the administrator of said estate, and amounted to a payment by said administrator to said heirs of so much of their distributive shares of said estate, and that it was regarded and treated as such payment by such administrator and the said heirs; that subsequent to such deposit one of the heirs of said Ash sold and conveyed her interest in the lands in controversy to Addison Daggy, and transferred her interest in the money so deposited to said Daggy, who, with the knowledge of the

plaintiff and said heirs, received from McGinnis, clerk, the sum of one hundred and fifty-eight dollars and fifty-five cents, that being the one-fifth part thereof; wherefore, that the residue of said money belongs to the balance of such heirs.

4. That the money so deposited was a re-deposit of certain moneys that had theretofore been deposited with the said clerk by one Jacob Daggy, in support of a tender of payment for certain lands alleged to have been purchased by him of said Isaac Ash, and for conveyance of title to which said lands he brought his said action, and which money is charged to have been lifted by the administrator of said Ash, deceased, after his death and without the consent of the heirs of the said Ash, and which was under the direction of the said heirs, and to enable them to prosecute said action so brought as aforesaid to the Supreme Court, and that said money was especially re-deposited to abide the event of said suit; and that said suit was prosecuted to final decision in the Supreme Court, where said cause was reversed, and the court below was directed to render judgment for such heirs, and that final judgment was rendered by the circuit court on the 2d day of April, 1857, when the right of such heirs to demand and receive such money became fixed and absolute, and that more than six years had elapsed since the right of action had accrued and the bringing of the action.

5. The fifth paragraph, after giving a full history of the several suits between Daggy and Ash, and the heirs of Ash and assignees of Daggy, as set out in the complaint, alleges that the money so deposited became the money of the said Jacob Daggy.

6. The sixth paragraph alleges that McGinnis ceased to be clerk of said county on the —— day of ———, 1859, and was succeeded by one Melvin McKee, who by virtue of his office became the legal custodian of the books, papers, records, and effects of the office of clerk of said county, and concludes with an averment that the suit to

recover the money so deposited should have been brought against the said McKee, and not against the estate of the said McGinnis, deceased; but it is not alleged as a matter of fact that the money so deposited with the said McGinnis was by him paid over to his successor in office.

The seventh paragraph of the answer is as follows :

" 7. And for further and seventh amended answer to the said action of the plaintiff, the defendants say that said money referred to in the complaint was specially deposited with said McGinnis by the heirs of Isaac Ash, deceased, for the purpose of enabling them to prosecute their writ of error to the Supreme Court in the said action brought by Jacob Daggy against Isaac Ash and first referred to in said complaint, and for said heirs; and at their instance and request as averred in said complaint, the plaintiff made said special deposit of said money, as shown by the writing styled by plaintiff a ' receipt,' a copy of which is attached to said complaint, and as is averred in said complaint.

" And defendants charge that after making said deposit as aforesaid for said heirs, the said plaintiff had no right inchoate, contingent, or otherwise in said deposit money. And defendants say that the plaintiff in his affidavit attached to said complaint recognized a payment by said McGinnis to one Addison Daggy, as the assignee of Evaline Holland and her husband, Granville Holland, who are of the heirs of the said Isaac Ash, deceased, there being five children and heirs, and the said Evaline Holland being one of said five; that said plaintiff therein on oath stated that ' one-fifth thereof,' meaning said deposit money, one hundred and fifty-eight dollars and fifty-five cents, has been paid. And defendants charge that said payment so as aforesaid recognized by the plaintiff was made to Addison Daggy as such assignee of said Evaline Holland and husband, and to no other or different person; and defendants say that by reason of the premises, Oliver H. P. Ash, Isaac N. Ash, Eliza I. Hensley, and Cynthia M. Wingate and her husband, Robert M. Wingate, the four other and only heirs of said Isaac Ash, deceased,

Lynch *et al.*, Ex'rs, *v.* Jennings, Adm'r.

except said Holland and wife, are entitled to recover whatever sums of said deposit may be unpaid, and that plaintiff has no right thereto and is estopped and precluded by his own act and declarations under oath in said affidavit attached to the original complaint herein (which by reference is made part of this answer), as well as by the express terms and conditions of said deposit, from setting up any claim to said fund or any part thereof; wherefore," etc.

A demurrer was filed to all the paragraphs of the answer but the first. The demurrer was sustained to the fourth, fifth, sixth, and seventh, and overruled as to the second and third, and proper exceptions were taken.

The death of Jacob Daggy was suggested, and his administrator, Charles W. Daggy, was substituted as defendant, who filed an answer, in which he disclaimed any and all interest in said matters in said suit involved, and any claim to said money so deposited as in the complaint and answers alleged.

There was a reply to the second and third paragraphs of the answer.

The cause was, by the agreement of the parties, submitted to the court for trial. The court rendered a special finding of facts and his conclusions of law thereon, but we do not deem it necessary to set out the special finding of facts, because they are in substance those stated in the complaint. There was no exception to the conclusions of law, but there was a motion for judgment for the appellants upon such finding.

There was a motion for a new trial, which was overruled. The evidence is not in the record.

The appellants have assigned the following errors :

1. For error of court in overruling motion of defendants to compel plaintiff to paragraph his amended and supplemental complaint.

2. Error of the court in overruling demurrer to the complaint.

3. Error of the court in overruling the motion of the

defendant to strike out certain portions of the complaint.

4. Error of the court in overruling defendants' motion to reject the separate answer of Charles Daggy, administrator of the estate of Jacob Daggy, deceased.

5. Error of the court in overruling motion to strike out certain parts of the separate answer of Charles W. Daggy.

The 6th, 7th, 8th, and 9th errors were based upon the action of the court in sustaining demurrers to the 4th, 5th, 6th, and 7th paragraphs of the answer.

10. Error of the court in overruling motion of the defendants for judgment in their favor upon the special findings of the court.

11. Error of the court in overruling motion for a new trial.

The 1st, 3d, 4th, and 5th assignments of error present no questions for our decision, for the reason that such questions are not reserved by a bill of exceptions.

The 10th assignment of error presents no question, because the appellants should have excepted to the decision of the court upon the conclusion of law. The motion for judgment on special findings presents no question for review here. *Cruzan* v. *Smith*, 41 Ind. 288.

The evidence is not in the record, and consequently no question is presented by the 11th assignment of error.

This leaves for our consideration the 2d, 6th, 7th, 8th, and 9th assignments of error.

The material facts averred in the complaint and answers were these:

Jacob Daggy claimed to have purchased from Isaac Ash certain real estate, for which he owed him $792.75. Daggy tendered to Ash that sum and demanded a deed. Ash refused to accept the money or make the deed. Daggy filed a complaint for a specific performance of the contract and paid into court for the use and benefit of Ash the above named sum in gold. An issue was formed and tried and resulted in a decree for a specific performance. Ash died intestate, and an administrator was appointed upon his

estate, who received from the clerk of said court the above named sum. Afterward, the heirs of Ash determined to appeal from such decree to the Supreme Court, and at their request the administrator re-deposited such money with the clerk of such court and took his receipt therefor, as set out in the complaint. The decree was reversed in the Supreme Court. While Daggy was supposed to be the owner of such real estate, he sold certain portions of it to divers persons, to whom he made deeds, and who were placed in possession of the parts so purchased. The heirs of Ash commenced another action, to quiet the title to and obtain partition of the lands which Daggy claimed to have purchased. The case was decided in favor of the plaintiffs. From this judgment, Daggy and others appealed to the Supreme Court, where the judgment below was reversed, and the court below was ordered to render a final judgment in favor of Daggy and the persons claiming under him, which was accordingly done. The result of these several suits was that Daggy got the land in controversy. The money deposited by the administrator of Ash with the clerk remained in his possession during the continuance of the litigation. The clerk died with the money in his possession. The money was demanded of the executors of the clerk by the administrator of Ash, and payment being refused, this action was brought to recover the same. The court below rendered judgment in favor of the estate of Ash, from which the executors of McGinnis, the clerk, have appealed to this court and seek a reversal upon several grounds.

It is, in the first place, insisted that the payment of the money into court did not vest the same in Ash.

It is claimed, in the second place, that the administrator of Ash deposited the money with the clerk to abide the event of that suit, and as that particular suit was decided in favor of the heirs of Ash, the money again became the property of Daggy, if he ever lost the title thereto.

It is, in the third place, argued, that if the final determination of the controversy deprived Daggy of any equitable

interest in the money, the title thereto was vested in the heirs, and not in the administrator of Ash, and that the suit should have been brought by them, and not by him. The fourth position assumed is, that the action is barred by the statute of limitations. The fifth position assumed by counsel for appellants is, that the appellee is estopped from maintaining the action in his representative capacity.

Jacob Daggy had the clear and undoubted right to maintain his action for a specific performance of the executory contract, without making a strict and unconditional tender, and without paying the money into court. It would have been sufficient for him to have tendered the money, upon the condition that a deed was made to him, and upon the refusal to accept the money and perform the contract, he might have brought his action and shown in the complaint such tender and refusal, and that he was ready, able, and prepared to pay whatever sum was found to be due, upon a decree for a specific performance.

The difference between a strict and unconditional tender and a conditional tender is stated with great accuracy and clearness by Mr. Chief Justice SHAW in *Irvin* v. *Gregory,* 13 Gray, 215, which was an action for specific performance and involved the questions of whether there had been a sufficient tender, and whether such tender should have been kept good by the payment of money into court.

The learned judge said:

"When a strict tender of money is required, it must be an unconditional offer of the full amount due, leaving it only at the will of the other to accept it.

"But when, in their nature, the stipulations are, the one to pay money and the other to execute a conveyance, and no time fixed, and no provision that either is to be done first, the covenants are mutual and dependent. The one is not bound to pay, without receiving his conveyance; nor the other to part with his land, without receiving his money. The performances must be simultaneous. In such case, it is not necessary on the part of the purchaser to make a strict tender, and

actually to deliver over the money unconditionally, without his deed; it is sufficient that upon reasonable notice to the owner he is ready and willing to perform, and when the performance is the payment of the money, that he has the money and is able and prepared to pay, and demands the deed, and the other absolutely refuses to receive the money and execute the deed; that is a sufficient tender of performance to warrant the party so offering to maintain his action. And there may be both dependent and independent stipulations in the same agreement. *Kane* v. *Hood*, 13 Pick. 281; *Couch* v. *Ingersoll*, 2 Pick. 292."

The same learned judge, on page 219, says: "When money is brought into court, with a plea of tender, it is an admission of the party bringing it that the adverse party is entitled to it, and may take it out when he pleases. But in a suit for specific performance, it is sufficient for the plaintiff to offer by his bill to bring in his money, whenever the sum is liquidated, and he has a decree for performance."

It was held by this court in *Reed* v. *Armstrong*, 18 Ind. 446, that "a tender, followed by bringing the money into court, is regarded as a payment at the time, and the person pleading it cannot withdraw the money so deposited, whether the verdict be for the same, or a greater amount than the sum tendered, but the same must be paid to the plaintiff."

The settled rule is, that where a strict and unconditional tender is required, it must be kept good by the actual payment of the money into court for the sole and exclusive use of the party to whom the tender was made. In such case, the tender and payment is an admission, on the part of the party making the tender and paying the money, that the adverse party is entitled to it and may take it out whenever he pleases.

But where the tender is conditional, as in a suit for specific performance, or to have a deed absolute upon its face decreed to be a mortgage, or the like, the payment of the money into court is not an admission that the money so paid into court belongs unconditionally to the adverse party, but it is an

admission that the money belongs to the adverse party whenever the condition upon which the tender was made, has been complied with by such party, or the court has decreed a performance thereof.

When a strict and unconditional tender has been made and followed by an actual payment into court, the adverse party can take the money without impairing his right to prosecute his action. But when money is tendered on a condition, the party to whom the tender is made is not entitled to the money until there has been a performance of the condition; and where money is conditionally paid into court, the acceptance of the same is an admission that the party so paying the same is entitled to the relief prayed for. A party can not receive money conditionally paid into court while he denies the existence of the contract upon which it is paid; for otherwise, in an action for specific performance, a defendant might take the money and afterward defeat a decree for a specific performance, and thus retain his land and get the purchase-money both, which would be inequitable and unjust. *Sowle* v. *Holdridge*, 25 Ind. 119.

The ruling in the case of *Irvin* v. *Gregory, supra,* was referred to and followed by this court in *Hunter* v. *Bales,* 24 Ind. 299.

An examination of the record shows that the money in dispute was deposited with the clerk for Ash, upon the condition that a specific performance of the executory contract was decreed. Ash denied the contract and sought to defeat a specific performance. He refused to receive the money. The court decreed a specific performance. The acceptance of the money by Ash would have been an acknowledgment of the correctness of the decree, but he died without receiving the money. His administrator received the money from the clerk, but afterward re-delivered it to the clerk. The evident purpose of the administrator was to place the money in the same condition that it was in before he received it from the clerk. This action being against the estate of the clerk, and not upon his official bond, it is not

necessary for us to decide whether, when he received the money from the administrator of Ash, it was a payment to him as the private agent of such administrator or in his official capacity. *Sowle* v. *Holdridge, supra.* The most favorable view for the appellants that can be taken of the transaction is, that the money was re-deposited with the clerk, subject to the same conditions as when originally deposited by Daggy. The judgment in favor of Daggy having been reversed, Daggy would have had the right to have withdrawn the money, but he retained the possession of the land in dispute and left the money in the hands of the clerk. By the subsequent action, it was finally decided that Daggy was entitled to a specific performance, and he obtained a title to the land. As we have seen, he admitted that Ash was entitled to the money, if he got the land. Daggy gained the land, and the money in equity belonged to Ash. It would be a very narrow and illiberal construction of the receipt given by McGinnis to the administrator of Ash to hold the administrator to the recital, that the money was "to abide the event of that suit." Such was not the meaning or purpose of the parties. The true purpose was to place the money in the same condition it was in when deposited by Daggy, and that condition was, that if Daggy gained the land, the money was to belong to Ash, and if Daggy lost the land, he was to have the money. Daggy never claimed the money, and his administrator disclaims all title to the money or interest in the suit. The rights of Daggy are asserted by the executors of McGinnis, who received the money and retain the same without any legal or equitable claim to it. There is neither justice nor equity in the defence.

But it is earnestly insisted by counsel for appellants, that it is fully shown by the receipt given by McGinnis that the money had become the property of the heirs of Ash, and that it was deposited by them. We do not think that instrument can bear any such construction. The following facts are recited therein: 1. That Daggy had instituted a

suit against Ash and had paid into court $792.65. 2. That Ash had refused to receive the money, but that it had been taken out by the administrator without the consent of the heirs as was alleged. 3. That the heirs of Ash had appealed the said cause to the Supreme Court and had directed the administrator *de bonis non* to re-deliver the same to the clerk of the Putnam Circuit Court, to abide the event of that suit. 4. That the administrator had deposited for that purpose the sum of $792.75. The only connection which the heirs of Ash had with the transaction was, that they had appealed the case and directed the administrator to re-deliver the money to the clerk. The administrator had receipted for the money, had it in his possession, and re-delivered it to the clerk. The widow of Ash was entitled to certain portions of the real estate and personal property against the creditors and the heirs, but the heirs were not entitled to any of the estate until the debts were paid. *The Northwestern Conference of Universalists* v. *Myers*, 36 Ind. 375.

It is alleged in the complaint in the present action, that the estate of Ash is unsettled, and that the money in controversy was needed to pay the debts. We entertain no doubt that the money belongs to the estate of Ash, and not to his heirs, and the action is properly brought by his administrator.

Is the action barred by the statute of limitations? We think it is very clear that it is not. The money having been deposited with McGinnis, no action could be maintained without a demand. The rule is, that the statute of limitations does not operate until the party has the right to apply to the proper tribunal for relief. Sec. 42, Angell Limitations, 34; *Atherton* v. *Williams*, 19 Ind. 105.

The right of action did not accrue until the demand was made. The suit was brought soon after the demand was made.

It remains to inquire whether the appellee is estopped from asserting that the money in question belongs to the estate of Isaac Ash, deceased.

We have been unable to discover any of the elements of an estoppel in favor of the appellants. The fact that the clerk paid to Daggy the sum of $158.55, with the knowledge and consent of the plaintiff, might estop him from recovering the money so paid, but it certainly can not estop him from collecting the balance.

We have discovered on error in the record, of which the appellants can complain, and have seen no equity in the defence set up.

The judgment is affirmed, with costs.