HOPEWELL BUILDING COMPANY, INC., Respondent, *v.* EDWARD
CALLAN, Appellant.

HOPEWELL BUILDING COMPANY, INC., Respondent, *v.* EDWARD F.
CALLAN, Appellant.

First Department, April 7, 1922.

Contracts — action for breach of loan agreement resulting in forced sale
of plaintiff's equity in property upon which loan was to be made —
judgment for plaintiff based on rule of damages very favorable to
defendant affirmed — damages — proper measure of damages value of
equity less amount realized on sale.

In an action to recover damages for the breach of an agreement to loan money
on a first mortgage upon certain property at five per cent interest in order that
a six per cent building loan mortgage might be paid off and funds obtained to
complete the building on the premises, there was evidence tending to show the
breach by defendant, that plaintiff was unable to obtain a loan elsewhere and
that the breach resulted in the forced sale of plaintiff's equity in the property.
The complaint was for the value of plaintiff's equity, but the court ruled that
plaintiff could recover no more than the difference between the interest on the
building loan mortgage and the interest to be paid defendant if the loan had
been made and left it for the jury to decide whether plaintiff in the exercise of
reasonable diligence could have obtained a loan which would have reduced or
avoided the interest loss. Defendant made no objection to such ruling.

*Held,* that as the rule of damages was most favorable to defendant and there were
no serious errors prejudicial to him, a judgment in favor of plaintiff should be
affirmed.

Evidence erroneously received that plaintiff sustained the loss of other equities
also did not affect the verdict under the theory of damages upon which the
case was submitted.

An error of the court in leaving it to the jury to say whether the loan agreement
required that the building should be completed before the defendant was obliged
to make the loan or whether it required merely the production of certain
certificates as evidence of that completion was not so prejudicial under the
circumstances as to require a new trial.

*It seems,* that the proper measure of damages was the value of plaintiff's equity
above the amount realized on the sale thereof.

APPEAL by the defendant, Edward Callan, in the first above-
entitled action, from a judgment of the Supreme Court in favor of
the plaintiff, entered in the office of the clerk of the county of
New York on the 22d day of October, 1920, upon the verdict
of a jury, and also from an order entered in said clerk's office on
the 25th day of October, 1920, denying defendant's motion for
a new trial made upon the minutes.

Appeal by the defendant, Edward F. Callan, in the second above-
entitled action, from a judgment of the Supreme Court in favor
of the plaintiff, entered in the office of the clerk of the county
of New York on the 22d day of October, 1920, upon the verdict
of a jury, and also from an order entered in said clerk's office on the

25th day of October, 1920, denying defendant's motion for a new trial made upon the minutes.

*Michael J. Sullivan* [*Louis O. Van Doren* of counsel], for the appellants.

*Gerson C. Young* of counsel [*Abraham M. Weinberg* with him on the brief], for the respondent.

LAUGHLIN, J.:

The plaintiff owned two adjoining tracts of land of different areas on Davidson avenue in the borough of The Bronx; and with funds derived from a building loan mortgage on the respective premises, which matured December 1, 1916, was erecting a five-story apartment house on each of them. With a view to having the building loan mortgage taken over and extended or paid off, and obtaining for its use in completing the buildings a balance of a few thousand dollars remaining unadvanced thereunder, it negotiated with the respective defendants a loan agreement in writing, bearing date the 8th of December, 1916, for a loan of money to it to be secured by its bond and a first mortgage on one of the parcels of real estate and the apartment house thereon. The apartment houses were nearly completed at that time, and the larger parcel was subject to a building loan mortgage for $60,000, and the other for $40,000. The defendant in the first-entitled action agreed to loan $59,000 on the larger parcel, and the other defendant agreed to loan $39,000 on the smaller parcel. The object of the loans, as plainly shown by the agreement, was to procure an assignment to the respective defendants of the existing building loan mortgages, and to extend them for five years, with a reduction of one per cent in the rate of interest, if that could be consummated, and, if not, to pay off and discharge the mortgages and make new first mortgages for five years bearing one per cent less interest than the building loan mortgages. The entire amount of the building loan mortgages had not been advanced, and this would have left the plaintiff a surplus of a few thousand dollars of the amount loaned to use in completing the buildings. Each loan agreement provided that the loan was to be made on or about January 1, 1917, provided the building should " be fully completed by that time and certificates from the Building and Tenement House Departments to that effect obtained and exhibited." After the loan agreements were made and prior to the time the loans were to be made, negotiations for the purchase of the premises by the defendant Edward Callan were opened between the parties. Apparently by mutual acquiescence the time specified for making the loans was allowed to pass. The subsequent negotiations between

the parties were conducted on the part of the plaintiff by one Norton, its president, and one Kight, its secretary and treasurer, and on the part of the defendants by their attorney Sullivan, who had full authority to represent them, and in part by one of the defendants. On the 24th or 25th of January, 1917, Sullivan was notified that the plaintiff had procured the necessary certificates, which were exhibited to him, and was desirous of closing the loan. According to the testimony of Norton, Sullivan said he was busy then and could not give the matter attention until the next week. Sullivan admitted on the witness stand that he promised to give it attention in a day or two. Norton testified that he next saw Sullivan on the thirtieth of January and again requested that the loan be closed, and that Sullivan replied that he was too busy to take the matter up then, but would endeavor to close it on February first; and that on February first Sullivan again claimed to be too busy, and stated that he and one of the defendants would be up to inspect the building in a day or two; and that they came and made some objection that all of the walls were not papered, and he informed them that the paper was in the building to be selected by the tenants, as customary; and that they also objected that the street was not paved, and he drew their attention to the fact that the loan agreement did not require that. On the twenty-sixth of January the plaintiff received by mail a letter from Sullivan inclosing copies of violations of building regulations and suggesting that they should be given immediate attention if not already removed; but it developed that these were violations discovered by the title company employed by defendants to examine the title, and had been removed before the certificates were issued. Kight testified that on the first of February he asked Sullivan to close the loan immediately, and that Sullivan said he was too busy just then, and drew attention to the facts that some of the paper had not been put on the walls and that the street had not been paved; that he replied, in substance, that these matters could be arranged by leaving a sufficient amount of the money in escrow to cover them; and to that Sullivan assented, and said that he would be up in a few days and they would then fix the time to close the loan; but that Sullivan did not come and they heard nothing further from him. Both Norton and Kight testified that on the sixth they met one of the defendants on the street and suggested to him that Sullivan did not seem anxious to close the loan, and he agreed to meet them in Sullivan's office in half an hour, and they went there and waited for him quite a while, but he did not appear; and Sullivan then said to them that there was no use in their waiting longer; that on that occasion

they informed Sullivan that a lien had been filed against the premises that morning, and Sullivan said he would not close the loan unless allowed to withhold $5,000 for paving the street, and this Norton declined on the ground that it was not authorized by the loan agreement. In that Norton was plainly right, and the wholly unauthorized demand made by Sullivan indicates that it was made in bad faith; and this is emphasized by the fact that on the sixteenth of February the plaintiff received from Sullivan a letter to the effect that during the past ten days Kight had failed to keep appointments with him with reference to closing the loans, and that his clients had been ready to close them from the first of January and were still anxious and willing to make the loans provided the plaintiff was ready, able and willing to live up to its part of the agreements, and notifying it that the defendants would be ready at his office at ten-thirty A. M. on the seventeenth of February to make the loans, and, if they were not closed at that time, his clients would not make them. The assertions in that letter are contrary to the facts clearly shown by the evidence. According to the evidence presented by the plaintiff several other mechanics' liens had been filed against the premises in the meantime; and, although it had successfully negotiated a loan for $20,000 to be secured by a second mortgage on the premises, with the proceeds of which and the surplus of the loans by the defendants it intended to and could have discharged all liens, it was unable to·consummate the matter on such short notice. Kight testified that, at the time so peremptorily fixed by Sullivan for closing, he called on Sullivan and stated to him, in substance, these facts, and asked for an extension of time, and delivered to him a letter from the plaintiff charging the defendants with the delay which resulted in the filing of the liens, and offering to close the loans as of that date as soon as the plaintiff could satisfy the liens, which it expected would be during the coming week, and to pay interest on the loans from that day, provided the defendants were unwilling to take assignments of the building loan mortgages before the discharge of the liens; but that Sullivan and one of the defendants thereupon peremptorily declined to take over the mortgages before the liens were discharged or to give any extension, and terminated the negotiations, and declared the deal off. The plaintiff also gave evidence tending to show that, owing to financial conditions incident to the war and the probability that this country would become involved therein, the amount of money available for loans became less and less, and that it was unable to obtain another loan. On the 26th of March, 1917, the plaintiff executed a warranty deed of

the premises to one Schofield as security for a loan of $8,750, and on the 10th of August, 1917, on a sale pursuant to a judgment in an action to foreclose one of the mechanics' liens against the premises, the plaintiff's equities were sold and conveyed. The complaint was for the value of the plaintiff's equities at the time defendants breached their contracts; but the court finally ruled that the plaintiff could not in any event recover more than the difference between the interest on the building loan mortgages, which was six per cent, and the interest to be paid the defendants pursuant to the loan agreement with the defendants, which was five per cent, and left it to the jury to decide, as a question of fact, whether the plaintiff in the exercise of reasonable care and diligence could have procured loans on such terms that it would have sustained no loss with respect to the interest, or on terms which would render its loss less than the one per cent for the term of the loan. The defendants made no claim that a recovery on that theory was not warranted by the pleadings or that they were misled to their prejudice. The ruling was most favorable to the defendants, for on one view of the evidence, the defendants might have been held liable for the loss of the plaintiff's equities, which would have resulted in much larger verdicts. That would have been the measure of the plaintiff's damages, if the failure of the defendants to make the loans had resulted in the foreclosure of the building loan mortgages. (*Pardee* v. *Douglas,* 122 App. Div. 395; *Doushkess* v. *Burger Brewing. Co.,* 20 id. 375; *Treanor* v. *N. Y. Breweries Co.,* 51 Misc. Rep. 607; *Bohemian-American W. G. Assn.* v. *Northern Bank,* 120 N. Y. Supp. 134; *Atherton* v. *Williams,* 19 Ind. 105; *Equitable Mortgage Co.* v. *Thorn,* 26 S. W. Rep. [Tex. Civ. App.] 276.) There was evidence tending to show that the defendants knew that the plaintiff was dependent upon the surplus of these loans and upon the proceeds of a loan on a second mortgage to protect its equities; and, in the circumstances, it might well have been claimed that the loss of the values of the equities over and above the amount realized on the sale thereof constituted damages directly flowing from the failure of the defendants to make the loans as agreed; for the defendants, by thus unequivocally declaring the contracts at an end without affording plaintiff reasonable time and opportunity to remove the liens, relieved plaintiff from fixing a reasonable time for closing and tendering full performance by it. The court erroneously received evidence that the plaintiff sustained the loss of other equities also, but that evidence did not affect the verdict on the theory of damages, on which the case was left to the jury. The appellants complain that the court erroneously left it to the jury to decide whether the building loan agreements

required that the apartment houses should be fully completed before the defendants were obligated to make the loans, or whether they required merely the production of the specified certificates as evidence of such completion. That, of course, was error, and the court should have ruled that both of these requirements were conditions precedent to be complied with by plaintiff; but we are of opinion that, in the circumstances, it was not so prejudicial to the appellants as to require a new trial, for the evidence shows that the buildings were substantially completed and that the defendants did not insist that the paper which was on the premises should be hung on the walls; and, on the contrary, according to the testimony of Kight, it was agreed that, with respect to that and with respect to the street improvements, the funds might be held in escrow. It appears, therefore, that under the rulings of the court the plaintiff has been confined virtually to recovery of the minimum amount of its damages. The plaintiff was obligated by the building loan bonds and mortgages to pay six per cent for five years; and, if the defendants had performed their contract, that rate of interest would have been reduced to five per cent. Although we deem the rule of damages applied by the trial court more favorable to the defendants than it might have been, it is, of course, their privilege to take the risk of a more unfavorable rule and a new trial; and, if serious error prejudicial to them on the theory on which the case was submitted to the jury were pointed out, it would be our duty to reverse and grant a new trial; but we find none.

The judgments and orders should, therefore, be affirmed, with costs.

DOWLING, SMITH, MERRELL and GREENBAUM, JJ., concur.

Judgments and orders affirmed, with costs.