OPINION OF THE COURT
James J. Brucia, J.
Following a jury trial before the undersigned a verdict was rendered against the defendant in favor of the infant plaintiff in this medical malpractice action as follows: $20,000 for pain and suffering to the present date, $2,000,000 for future pain and suffering and $1,000,000 for diminution of earning capacity in the future.
The jury further found that the award for future pain and suffering was designed to compensate plaintiff for a period of 63 years. The award for diminution of earning capacity in the future was designed to compensate plaintiff for a period of 48 years.
Inasmuch as the future damage awards exceeded $250,000 the provisions of CPLR 5031 (e) were triggered and a posttrial hearing was held before the undersigned to hear expert testimony on the discount rate to be applied. In addition, oral argument was heard on two other issues.
First, regarding the award for future pain and suffering, an issue was raised as to whether CPLR 5031 (e) required the discount rate (used in calculating present value of the annuity) to be applied over a term of 10 years or the full 63-year compensatory period.
Second, regarding the award of diminution of future earning capacity an issue was raised as to whether the payouts on the annuity would commence now or sometime in the future at a time commensurate with when the infant plaintiff would have presumably commenced employment.
As each of these issues are distinct, they shall be separately addressed.
CPLR 5031 (e) provides that:
*535 “With respect to awards of future damages in excess of two hundred fifty thousand dollars in an action to recover damages for dental, medical or podiatric malpractice, the court shall enter judgment as follows:
"After making any adjustments prescribed by subdivisions (b), (c) and (d) of this section, the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments. The present value of such contract shall be determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the full amount of the remaining future damages, as calculated pursuant to this subdivision. The period of time over which such periodic payments shall be made and the period of time used to calculate the present value of the annuity contract shall be the period of years determined by the trier of fact in arriving at the itemized verdict; provided, however, that the period of time over which such periodic payments shall be made and the period of time used to calculate the present value for damages attributable to pain and suffering shall be ten years or the period of time determined by the trier of fact, whichever is less. The court, as part of its judgment, shall direct that the defendants and their insurance carriers shall be required to offer and to guarantee the purchase and payment of such an annuity contract. Such annuity contract shall provide for the payment of the annual payments of such remaining future damages over the period of time determined pursuant to this subdivision. The annual payment for the first year shall be calculated by dividing the remaining amount of future damages by the number of years over which such payments shall be made and the payment due in each succeeding year shall be computed by adding four percent to the previous year’s payment. Where payment of a portion of the future damages terminates in accordance with the provisions of this article, the four percent added payment shall be based only upon that portion of the damages that remains subject to continued payment. Unless otherwise agreed, the annual sum so arrived at shall be paid in equal monthly installments and in advance.”
The Discount Rate — Each party presented an expert to testify in support of a certain discount rate. Plaintiff’s expert proffered 6.1% as the appropriate discount rate using the 30-year municipal bond buyer’s index for 30-year bonds as of the *536 verdict date. Said bonds are among the safest and are triple tax free in that they are free from city, State and Federal levies. As the future award reflects compensation for more than 30 years the longest term bond (i.e., 30 years) was selected.
While this court accepts and adopts plaintiffs expert’s testimony as to the wisdom of selecting bonds with the highest level of safety, this court rejects her conclusion that only fully tax free bonds should be considered. The court likewise rejects reliance upon only the 30-year bond term as this fails to consider the 10-year reference period for pain and suffering awards or the consideration that the annuity is paid out piecemeal over time.
Inasmuch as Treasury Bills were considered an investment as safe as the municipal triple tax free bonds, this court accepts 6.27% as the discount rate as this is the average yield for said bonds for the 30-year postverdict period.
The testimony of defendant’s expert has been all but entirely rejected as his bond figures were premised upon a date other than the verdict date. CPLR 5031 (e) requires application of "the discount rate in effect at the time of the award” and said expert conceded that the bond figures fluctuate daily.
It is of no consequence that following the testimony of defendant’s expert, plaintiff moved to strike said testimony by reason of the foregoing, but subsequently withdrew said motion based upon a stipulation that the witness if recalled to the stand would have adhered to his proffered discount rate of 7%. Simply put, his figures, being without relevance to the date of the verdict, are of no probative value. That defendant’s expert would have adhered to his conclusion to apply a 7% discount rate is meaningless in the absence of some relevant factual basis in the record to support such a conclusion (see, Hambsch v New York City Tr. Auth., 63 NY2d 723, 725; Interstate Cigar Co. v Dynaire Corp., 176 AD2d 699).
The Applicable Term for Pain and Suffering — As argued by plaintiff, the provisions of CPLR 5031 (e), while hardly a model of clarity, nevertheless clearly mandate that the discount rate for pain and suffering shall be applied to a 10-year term. Said subdivision in relevant part states that "the period of time over which such periodic payments shall be made and the period of time used to calculate the present value for damages attributable to pain and suffering shall be ten years or the period of time determined by the trier of fact, whichever is less” (emphasis added).
*537 The Applicable Commencement Date for Diminution of Earning Capacity — The issue is without question the most interesting to consider and resolve. Moreover, its resolution will create perhaps the greatest financial impact on the parties.
Plaintiff contends that the annuity to be purchased should be calculated and structured to provide for an immediate commencement of payments on the diminution of earning capacity award notwithstanding that the infant plaintiff, who was two years of age at the time of trial, would begin recovering monies for diminution of earning capacity many years before he could ever enter the work force.
Defendant in turn contends that it is precisely because the infant plaintiff is years away from having any income that it would be inherently unfair to the defendant and a windfall to plaintiff to allow immediate payouts to plaintiff on this award. Moreover, the defendant points out that the jury based its award figure upon plaintiffs expert testimony which was premised upon plaintiffs entering the work force at the age of 22, a full 20 years from now.
For several reasons the court finds that the annuity for diminution of future earning capacity is to be calculated and paid in accordance with an immediate payout structure.
CPLR 5031 (e) was prompted by a general desire by the Legislature to reduce the cost and insure the availability of medical malpractice insurance (see, L 1985, ch 294, § 1). However, this general intent of the Legislature to make medical malpractice insurance more affordable by reducing the out-of-pocket cost of large damage awards cannot blindly require courts to interpret CPLR 5031 (e) so as to minimize the financial impact of large medical malpractice awards.
It is a fundamental principle of statutory construction that "generally, statutes in derogation [of the common law] * * * are strictly construed” (McKinney’s Cons Laws of NY, Book 1, Statutes § 301 [a]). Courts cannot under the guise of interpretation graft onto a statute provisions not specifically contained or alluded to therein. There is nothing in CPLR 5031 (e) which states or even suggests that any annuity resulting from application of its provisions will have a future commencement date for the first of the contemplated periodic payments. To the contrary, said subdivision requires the payout of monthly payments over the period of time determined pursuant to its provisions.
*538 Moreover, CPLR 4111 (d), which operates in tandem with CPLR 5031 (e) to require the inclusion of certain instructions in the jury charge and an itemized verdict, makes no mention of a commencement date for payments but merely the period of years over which the damage awards are intended to provide compensation.
That this court is unable to find within the provisions of CPLR 5031 (e) (or any related statutory provision) any authority for a future commencement date of any annuity payments does no apparent violence to the Legislature’s goal of reducing the out-of-pocket cost of large medical malpractice awards. It is beyond cavil that even in adopting plaintiffs’ proposed interpretation of CPLR 5031 (e) the actual payment to the infant plaintiff, involving as it does an annuity paid out over the next 48 years, will result in a significantly smaller recovery than had said infant plaintiff been paid in accordance with the common law in effect prior to the passage of CPLR 5031 (see generally, PJI 2:290, and commentary as it applies to cases not covered by CPLR 5031).
An equally compelling alternative argument exists for adopting plaintiffs’ position; it is the only rational means for interpreting the jury’s verdict.
The jury was instructed that the plaintiff had a statistical "work expectancy of 30.7 years” and a statistical life expectancy of "64.7 * * * years, that is, until age 66.7”. The jury was further aware that the infant plaintiff was two years of age at the time of trial and the expert testimony presumed a work commencement date at age 22, or 20 years from the time of trial. With all of the foregoing information the jury found that the award for diminution in earning capacity was "designed to compensate [the infant plaintiff] for a period of * * * 48 years” and that the award for future pain and suffering was "designed to compensate him for a period of * * * 63 years”.
With the foregoing as background, defendant’s interpretation of the jury’s verdict becomes untenable. Defendant contends that the period of compensation for diminution of future earning capacity is equal to the actual work life of the infant plaintiff and that therefore the infant plaintiff’s annuity payments for this award should first commence when the infant plaintiff turns 22 years of age and then continue for a period of 48 years thereafter. This conclusion however would fly in the face of the plaintiff’s statistical work life of only 30.7 *539 years. Moreover, given the jury’s finding that the infant plaintiff should be compensated for future pain and suffering for 63 more years (that is until age 65) the defendant’s interpretation would result in the cessation of the infant plaintiff’s pain and suffering award five years prior to the cessation of his award for diminution in future earning capacity. Since the future pain and suffering award was reached with consideration of the infant plaintiff’s statistical life expectancy of 66.7 years it becomes incredible that the award for diminution in future earning capacity would exceed the infant plaintiff’s anticipated lifetime.
In distinct contrast to the defendant’s interpretation of the jury verdict, the 48-year compensatory period appears wholly consistent with the infant plaintiff’s anticipated start of employment 20 years from now (at age 22) and lasting for a period of 30.7 years if one starts the running of the compensatory period immediately. The 2.7 years’ distinction between 48 years and 50.7 years (20 years plus 30.7) is hardly cause for concern given the uncertain nature of the figures furnished to the jury regarding the infant plaintiff’s future employment. If anything, it dovetails nicely with the jury’s presumed filing of a 65-year life expectancy (63 years of future pain and suffering plus 2 years) and the infant plaintiff’s statistical life expectancy of 66.7 years.
In view of the above, one can only rationally conclude by the jury’s verdict'that they fully contemplated and intended that the damage award for diminution of future earning capacity would be calculated from the date of the verdict for a period of 48 years hence.
To Summarize—
1. The discount rate shall be 6.27%;
2. That portion of the annuity which covers the award for future pain and suffering shall be calculated and paid over a 10-year period; and
3. That part of the annuity which covers the award for diminution of earning capacity in the future shall be calculated and paid over a 48-year period effective immediately.
As the parties agreed that armed with the foregoing they could and would settle a judgment (and/or counterjudgment) in compliance with the remaining provisions of CPLR 5031 (e), this court shall go no further at this time.