OPINION OF THE COURT
Robert S. Rose, J.
By its verdict in the trial of this action rendered on June 16, 1993, the jury found that defendant was liable for an anticipatory breach of its agreement to loan money to plaintiff for the project of renovating its premises in the City of Binghamton. However, the jury also concluded that plaintiff’s inability to obtain alternative financing was due to its own inaction. Therefore, plaintiff did not recover its claimed special damages, but only the normal measure of damages for the breach of a loan agreement: the increased interest cost that *918 would have been incurred if plaintiff had borrowed a comparable amount of money from another lender.
After the jury rendered this verdict, the court stated that the resulting damages would be computed by subtracting the amount of interest that would have been payable at the rate of 6% under the loan agreement with defendant from the amount of interest that would have been incurred in obtaining equivalent funds from another source at the prime rate of interest plus 1 Vz%. The court expected to take judicial notice of what the prime rate was at the time of the breach and merely have the parties calculate the difference in interest payments.
Following trial, plaintiff moved to set aside the verdict and in the alternative, for an order fixing the amount of damages and directing entry of judgment. Plaintiff’s first motion was denied from the Bench on the return date, but the court reserved decision on the second motion to consider the issues discussed below.
In support of its second motion, plaintiff asserts that the measure of damages in the difference in interest on the remaining $77,000 in loan proceeds for the remaining term of 18 years between the 6% payable under the original loan and the prime rate, which plaintiff calculated to be an average of 8%, plus lVz%, for a total of 9Vz%. Using these figures, plaintiff claims total damages of $39,858.94.
In opposition to plaintiff’s motion, defendant objects to the use of the prime rate plus lVz% and to plaintiff’s computation of an average of 9 Vi % on the grounds that a lower rate might have been available, that the prime rate fluctuates over time, and that the prime rate has decreased since June of 1990, when the breach occurred. In addition, defendant asserts that $34,700, rather than $77,000, should be the principal amount used in the calculation since that is the amount defendant withheld in June of 1990. Defendant also contends that it is entitled to an offset for repayment of the loan proceeds paid to plaintiff prior to June of 1990, and argues that the time period for the computation should be 14 months, rather than 18 years, because commercial loans with 6% rates of interest became available within that time period.
Defendant further asserts that the resulting difference in interest payments should be discounted to present value, and reiterates its prior contentions that overruns increased the cost of the project by $1,000,000, that plaintiff was unable to *919 obtain substitute funds due to that reason, and that plaintiff would not have been able to complete the project even if alternate funds had been obtained.
As to the computation of damages, the court cannot agree with most of defendant’s contentions. First, it is the court’s recollection that the only proof of what interest could have been obtained from another lender at the time of the breach was plaintiff’s evidence that the prime rate plus 1 Vi% was available. Since defendant presented no proof that a lower rate could have been obtained, the court’s use of any other interest rate would be purely speculative.
Second, as to the term of the substitute loan, it is clear that the measure of damages is based on the increased cost of obtaining the same amount of money for the same term as was to be obtained from defendant (see, Hopewell Bldg. Co. v Callan, 200 App Div 588, 592-593; see also, Annotation, Measure and Elements of Damages for Breach of Contract to Lend Money, 4 ALR4th 682, 690 et seq., § 5). The original loan period under the agreement with defendant was 20 years. Thus, plaintiff’s use of 18 years, the balance of original loan period at the time of the breach, is appropriate.
Third, defendant’s assertion that only $34,700 should be used as the principal amount ignores the jury’s explicit finding that defendant had anticipatorily breached its loan agreement in June of 1990. Therefore, the entire unpaid amount was effectively withheld, and plaintiff had to seek to borrow the full amount in lieu of defendant’s repudiated performance.
Fourth, as to defendant’s claim for an offset, the court observes that defendant’s present contention is based in equity and that it did not prosecute a counterclaim in contract for the amount to be repaid by plaintiff on the original loan agreement. However, even if such a claim were considered here, defendant would not succeed because it again overlooks the effect of the jury’s verdict. A second consequence of defendant’s anticipatory breach, as discussed in this court’s prior decision dated May 27, 1993, is that it excused plaintiff’s obligation of future performance under that agreement, including the obligation to repay the proceeds previously advanced (see, American List Corp. v U.S. News & World Report, 75 NY2d 38, 44). Therefore, defendant is not entitled to repayment of the loan proceeds as a matter of law.
Fifth, the court cannot agree that plaintiff’s allegedly dismal prospects for completing its project or obtaining alterna *920 tive financing due to its significant cost overruns are at all relevant. In American List Corp. v U.S. News & World Report (supra, at 45), the Court of Appeals held that where future damages are recoverable for an anticipatory breach of contract, the amount recovered by the nonrepudiating party should not be decreased by considerations of that party’s ability to perform in the future.
Sixth, defendant’s argument that plaintiffs damages should be limited because a higher-interest-rate loan obtained in June of 1990 could readily have been refinanced at a lower rate within 14 months is also irrelevant. In essence, defendant is asserting that plaintiff could have mitigated its damages by refinancing, but the court previously found that defendant had waived the defense by not pleading it and denied defendant’s motion to add it as an affirmative defense. Thus, there is no merit in this contention.
However, the Court’s holding in the American List case (supra, at 44) does suggest that plaintiffs damages should be reduced to present value by using the discount rate applicable at the time of the award. Although the court has not found a reported New York case where damages for breach of an agreement to loan money have been reduced to present value, courts in other States have done so (see, e.g., Financial Fed. Sav. & Loan Assn. v Continental Enters., 338 So 2d 907 [Fla App 1976]), such a reduction would be consistent with several holdings by the Court of Appeals (see, American List Corp. v U.S. News & World Report, supra, at 45, and cases cited therein), and thus, the court will adopt this approach.
The logical next issue is what discount rate should be applied. At least one court has utilized the Federal Reserve "discount rate”, the interest rate charged on loans to depository institutions by the New York Federal Reserve Bank (Frey v Smith & Sons, 751 F Supp 1052, 1057 [ND NY 1990]). Since this rate is reported daily, it is easy to ascertain, but it is not necessarily indicative of what return a plaintiff could receive from the investment of the damages paid by a defendant in an annuity available in the commercial market. However, the court notes that the current Federal Reserve discount rate as stated in the New York Times (Aug. 19, 1993, at D14) is 3%.
Other courts have recognized that the term "discount rate” has no fixed meaning and have accepted discount rates testified to by a party’s economist at trial (see, e.g., Doe v State of New York, 189 AD2d 199, 210: Peterson v Zuercher, 152 Misc *921 2d 684, 688-690). This is not an option here however, since no such testimony was presented by the parties.
However, at least one New York court recently and persuasively reasoned that the interest rate payable on United States Treasury Bills for a time period comparable to the period over which the future damages for personal injury are to be incurred is the appropriate discount rate to be used under CPLR 5031 (e) because it represents a safe and ascertainable rate of return available for the investment of an injured party’s financial recovery (see, Reid v County of Nassau, 156 Misc 2d 533, 535-536 [Sup Ct, Nassau County 1993]). For similar reasons, the court accepts this determination of the discount rate and, again from the financial pages of the New York Times (id.), takes judicial notice that Treasury Bills payable at the end of 15 years from now (or 18 years from the time when plaintiff would have obtained alternate financing) currently yield 5.94%.
Finally, there remains the issue of what prime interest rate should be used in the computation of the damages. In its attorney’s affidavit, plaintiff calculates 8% to be an average of what the prime rate has been since November of 1989. The parties apparently agree that plaintiff would have obtained alternate commercial financing at a floating rate to be recalculated as the prime rate increased or decreased over time. Since defendant has only speculated that the prime rate will remain at its current low level and has presented no evidence disputing plaintiff’s approximation of its average value since defendant’s breach, the court takes judicial notice of the values of the prime rate since June of 1990, accepts plaintiff’s figure as a reasonable estimate of the average prime rate for the next 15 years, and finds that in June of 1990, plaintiff could have obtained alternative financing at an effective average annual interest rate of 8% plus the 1Vi% factor mentioned above.
Therefore, the plaintiff is directed to calculate the damages based upon a principal amount of $77,000, an interest rate of 9.5%, and for a term of 18 years. That amount will then be reduced to present value using a discount rate of 5.94% and a term of 15 years. The court will then review plaintiff’s calcula *922 tians and defendant’s objections, if any, and then issue a judgment in an appropriate amount.
Accordingly, plaintiff’s motion to set aside the verdict is denied and its motion for an order fixing the amount of damages is granted. No motion costs are awarded.