May Term,
1846.

CONWELL
v.
CLAYPOOL.

---

## CONWELL *v.* CLAYPOOL.

A vendor of land sued the vendee in chancery for the purchase-money. *Held*, that the suit might be sustained.

It appeared in such suit, that the parties had agreed that the tract of land sold (the number of acres not being known) should be surveyed by a certain person, and that that person had surveyed it accordingly. *Held*, that the survey was *prima facie* evidence for the complainant of the number of acres which the tract contained.

Irrelevant matter contained in an answer in chancery should be struck out.

If money alleged in such answer to have been tendered to the complainant be not brought into Court, the allegation of tender should be struck out of the answer.

A fact alleged in a bill in chancery and not denied in the answer must be taken to be true.

If the vendee of land who has contracted to pay the purchase-money at a certain time, and has taken possession of the land, cannot show a readiness to pay the money at the time it became due, he is liable for interest on it from that time.

The vendor of land having tendered, conformably to his contract, a deed to the vendee executed and acknowledged according to the law in force at the time of the tender, may file a bill in chancery for the purchase-money. But if before a decree (the deed not having been delivered), the form of acknowledgment be changed by law, the decree for the complainant should be that he deliver the deed duly executed and acknowledged, and that the defendant at the same time pay the purchase-money.

The Supreme Court may modify a decree of the Circuit Court.

May Term,
1846.

ERROR to the *Fayette* Circuit Court.

DEWEY, J.—This was a bill in equity brought by *Claypool* against *Conwell* for the specific performance of a contract. The bill alleges that on the 26th of *March*, 1842, the parties entered into a contract under seal, by which *Claypool* agreed to sell to *Conwell* a certain tract of land, supposed to contain forty acres, at the price of thirty dollars per acre; for which *Conwell* agreed to pay 600 dollars, in bankable paper money, on the 25th of *April* of the same year, and the residue of the purchase-money in one year from that time in like funds. It was also agreed that a survey of the premises should be made previously to the time of the last payment; and that *Claypool* should convey the premises in fee-simple, with warranty, to *Conwell*, on the payment of the whole of the purchase-money. The bill further alleges that *Conwell* immediately took possession of the premises, and held them at the time of filing the bill; that on the 25th of *April*, 1842, the time stipulated for the first payment of 600 dollars, *Conwell* paid 400 dollars, and subsequently 200 dollars more; that by the mutual consent of the parties, one *Dickey*, the county surveyor, on the 13th of *July*, 1843, surveyed the premises in the presence of both parties (*Conwell* being satisfied with the survey) and made a plat thereof, and calculated the quantity of land to be 41 acres and 49 hundredths, amounting, at thirty dollars per acre, to 1,244 dollars and 70 cents, which sum together with interest, after deducting the 600 dollars previously paid, was due to *Claypool;* that on the 24th of *July*, 1843, *Claypool* tendered to *Conwell* a warranty deed in fee-simple, executed by *Claypool* and his wife, for the land as surveyed, and demanded the payment of the residue of the purchase-money with interest; and that *Conwell* refused to receive the deed, or pay the money. The bill alleges bankable paper to have been at par value. The prayer is, that the defendant be decreed to pay the residue of the purchase-money with interest; and that in default thereof the land be sold, &c.

The answer of *Conwell* admits the contract, the taking and keeping possession of the land by him, and the payment by him of 400 dollars, as stated in the bill; but he claims that the 200 dollars mentioned in the bill were paid on the 12th of *May*, 1842. The answer also admits that the parties mutually agreed

CONWELL
v.
CLAYPOOL.

Monday,
July 6.

that *Dickey* should survey the land at the time named in the bill, that he did then survey it in the presence of both parties, made a plat thereof, and calculated the quantity at 41 acres and 49 hundredths, as alleged by the complainant; but it denies that *Conwell* was satisfied with the survey, and alleges that he expressed his dissatisfaction at the time, that as he was informed and believed the survey was not correct as to the quantity, that the surveyor changed ancient bounds and lines, and run into land owned and claimed by a third person. The answer admits the tender of a deed for the surveyed land as alleged in the bill, and alleges that the defendant refused to receive it on account of the incorrectness of the survey, and of its embracing land not owned by *Claypool.*

The answer originally contained the following allegations, viz., that at the time the contract mentioned in the bill was made, the parties made another sealed contract as follows— "*Conwell* agrees and binds himself to make to *Claypool* a quit claim deed for five acres of land, being the correction of an error made in a deed from *Daniel Heaton* to *John Conner;* and *Claypool* agrees to make a quit claim deed for five acres, being also the correction of the error aforesaid;" that this latter agreement was understood and intended by the parties to constitute a part of the contract set out in the bill; that one reason why *Conwell* did not accept the deed tendered by *Claypool* for the surveyed land was, that he did not also, at the same time, tender the quit claim deed specified in the last agreement; that afterwards however, in 1844, *Claypool* did execute and deliver to *Conwell* the quit claim deed, and *Conwell*, at the same time, tendered a quit claim deed to *Claypool*, and also then tendered to him 640 dollars and 70 cents, the residue of the purchase-money for the land named in the first contract, the sum claimed by *Conwell* to be due from him; which money he was at all times ready to pay, and had brought into Court. These allegations were stricken from the answer on the exceptions of the complainant, because the two contracts had no connection, and because the money was not in fact brought into Court.

The cause was submitted on bill, answer, general replication, and exhibits. The Court decreed, that *Conwell* should pay to *Claypool* 701 dollars and 67 cents, the remainder of

the purchase-money for the 41 acres and 49 hundredths of land, including interest from the times of payment stipulated in the contract, and the costs.

It is urged against the decree, 1. That the bill shows only matter of exclusive legal jurisdiction, its object being the recovery of damages. This objection cannot be sustained. It is a rule of equity that remedies are mutual; that when one party can seek relief in equity, the other has the same right. *Adderley* v. *Dixon*, 1 Sim. & Stu. 607.—2 Story's Eq. 99. The vendor, therefore, may sustain a bill for the purchase-money. 1 Sugd. Vend. 216.

2. That there was no proof that the survey of the 41 acres and 49 hundredths of land was correct, and did not embrace land not owned by *Claypool*. As the parties mutually agreed upon a surveyor to survey the land for them, and as the allegation that the survey was not correct is made by the defendant, we think the proof, the want of which he complains of, should have come from him; and that the complainant might safely rely upon the survey as *prima facie* evidence of the quantity of land for which he was entitled to be paid.

3. The striking out of part of the answer is alleged to have been erroneous. But we see no error in that. Even had the contract respecting the quit claim deeds been contained in the same instrument with the other contract, it is evident that the executing a quit claim deed by *Claypool* would have had no connection with the obligation of *Conwell* to pay for the other land. His agreement was to pay for that 600 dollars on a certain day, and the residue of the purchase-money in one year afterwards; and *Claypool* was bound to make the deed for that land when the money should be paid. The agreement of *Claypool* to execute a quit claim deed for a different piece of land is a distinct covenant, and its performance could not have formed a condition precedent to his right to enforce the promise of *Conwell* to pay for the land which he had purchased. But even if the making of the quit claim deed be viewed as a condition precedent to the right of *Claypool* to claim the purchase-money for the other land, it would not benefit the plaintiff in error. The rejected portion of the answer shows that *Claypool* actually did make it, and that *Conwell* accepted it before the filing of the bill. The portion

of the answer respecting the quit claim deed, however, was correctly stricken out for being irrelevant to the merits of the cause. And that part respecting the tender was also properly rejected, because the money tendered was not brought into Court.

4. It is said that there was no proof of the value of bankable paper. This objection cannot be sustained. The bill alleges it was of specie value; and the answer does not deny the fact. It must therefore be taken to be true.

5. It is contended that the decree is wrong, because the sum decreed to be paid includes interest from the times stipulated by the contract for the payment of the purchase-money, instead of from the time when the land was surveyed. It is sufficient to remark in answer to this objection, that if *Conwell* wished to avoid the payment of interest, he should have showed a readiness to pay the money according to his contract. He had possession of the land, and it is unreasonable that he should withhold the purchase-money without interest.

6. An objection is made to the sufficiency of the acknowledgment by the complainant's wife of the deed tendered by him. At the time the deed was tendered, in *July*, 1843, the acknowledgment was valid. The complainant, therefore, having offered to perform the contract on his part, was entitled to bring his bill. But the deed has never been delivered; and the law now in force requires an acknowledgment of the wife, in a form somewhat different from *that* which she made. This will require a modification, but not an entire reversal, of the decree. And, indeed, independently of this circumstance, the decree requires to be modified. It is for the payment of the balance of the purchase-money due from the defendant, without any notice of the deed to be delivered by the complainant. It should have been, that the complainant deliver the deed duly executed and acknowledged by himself and his wife, and that the defendant at the same time pay the money. The deed is now produced in this Court ready to be delivered to *Conwell*. The alteration proper to be made in the decree, this Court is authorized to make. R. S. 1843, p. 634.

*Decree* for the complainant in conformity to the above opinion, with costs.

*C. H. Test,* for the plaintiff.

*J. S. Newman* and *S. W. Parker,* for the defendant.