## HUNTER and Others *v.* BALES.

PRACTICE. — Where in a suit there are two conflicting theories, and there was evidence on the trial tending to support each, the Supreme Court will, on appeal, adopt the theory which will sustain the finding of the court below.

CONTRACT FOR SALE OF REAL ESTATE. — SPECIFIC PERFORMANCE. — A, by his agent, engaged by an oral contract to sell a tract of land to B. A afterward, in person, orally engaged to sell the same tract to C. Subsequently, A made a title bond to B for the land, but before having executed a deed, conveyed the land by deed to C, who had full knowledge of the outstanding title bond.

*Held*, that as between B and C, B had the prior equity, and could enforce a specific performance.

SAME. — In equity, a contract for the sale of land is not merely executory, but the vendee becomes the owner, and the vendor is seized in trust for him, and has a mere lien for the purchase money. But the contract must be such an one as would support a decree for specific performance.

EQUITY. — Nothing undone will be looked upon in equity as done, but what ought to be done, nor except in favor of those who have a right to pray that it shall be done.

SPECIFIC PERFORMANCE.—TENDER.—In a suit for specific performance, where money is due from the plaintiff, it is sufficient for him to offer by his complaint to bring it into court, whenever the same shall be liquidated, and he has a decree for performance.

SAME.—INTEREST AFTER TENDER,—After the obligee in a title bond tenders the purchase money and all interest accrued, and demands a conveyance, he is not chargeable with interest, unless he has used the money, and it is incumbent on the vendor to prove such use.

APPEAL from the *Hancock* Circuit Court.

GREGORY, J.—*Bales*, as assignee of one *Thompson*, prosecutes the case in judgment against *Matthew R. Hunter*, *Moses Hunter*, and one *Moore*, for the specific performance of a contract for the sale of real estate. Trial by the court; finding for the plaintiff; motion for a new trial overruled, and decree for specific performance. The defendants appeal to this court. There are two conflicting theories in this case, and there was evidence on the trial in support of each. In such case, it is the duty of the appellate court to adopt that theory which will sustain the finding below. That court saw the witnesses, heard them testify, observed their conduct, and had a better opportunity of forming a just conclusion on the weight of the evidence than we can have from the reading of the transcript of the record. Whatever we may think of the testimony, under the *rule* on the subject, the court below had a right to find that *Moore* resided in *Ohio;* that in 1856, he was the owner of the land; that in the spring of that year, *Thompson*, who resided in *Indiana*, visited the former with a view of purchasing it; that *Moore* declined selling, but promised that he would be out to *Indiana* in the fall, and that if he concluded to sell, he would give *Thompson* the refusal; that *Moore* did come to *Indiana* that fall, and appointed one *Phippens* his agent to sell the land; that *Moore* and *Thompson* met; that the latter proposed to purchase the land, but the former said he was going to *Iowa*, and had not time to attend to the matter, and referred him to his agent, who he said was authorized to sell to him, and that after informing him

Hunter and Others v. Bales.

of the terms, they parted; that *Thompson* went to the agent, and made a verbal agreement to purchase the land, which was to be reduced to writing the next day, but on *Thompson's* offering to comply, the agent declined to execute the writings, and said that *Moore* might sell his own land; that on the 1st of *December* of that year, *Moore* made a verbal agreement to sell the land to *Matthew R. Hunter, provided the agent had not sold it,* by which agreement *Hunter* was to pay a part of the purchase money on *Moore's* return from *Iowa,* and give his note for the residue, payable in one year, upon which *Moore* was to execute a deed. On the 6th of *December,* 1856, *Moore* executed the title bond now in suit to *Thompson.* The latter told the former, at the time, that he had purchased the land of the agent so far as words could do it. On the 12th of that month, *Moore* deeded the land to *Matthew R. Hunter,* with a full knowledge in the latter of the prior written agreement to *Thompson.* *Thompson* tendered the purchase money of the land, when due, to *Hunter,* the last payment in *December,* 1857, and demanded a deed, which was refused. *Matthew R. Hunter,* in *February,* 1858, conveyed the land, together with another eighty acre tract, to *Moses Hunter,* for $1600, only $150 of which has been paid.

It is urged that *Thompson* did not make a verbal contract with the agent; that it was only a negotiation; that the agreement was to be reduced to writing, and until that was done, the bargain was not consummated. It is just as true of the verbal understanding between *Hunter* and *Moore,* for that was to be reduced to writing by the execution of the deed, and the giving of the note for the deferred payment.

We think that the court below, in finding that *Thompson* had the prior equity, did not commit an error of which the appellants have a right to complain.

There is a question much discussed by counsel, which, we think, is not necessary to the decision of the case; but,

under one theory of it, that question is one of importance, and we are not inclined to pass it over in silence.

It is contended that a parol contract for the sale of land, or for a lease for a longer term than three years, is not void, but valid for many purposes, and a conveyance in compliance with such a contract will relate back to its date, and overreach an intermediate valid sale; that a vendor may, by pleading the statute of frauds, avoid a parol contract for the sale of land, or he may waive it and consummate his contract, and cannot be deprived of his right to do so by a stranger. The cases of *Gudgell* v. *Duvall*, 4 J. J. Marsh. 290, *Clary's Heirs* v. *Marshall's Heirs*, 5 B. Monroe 266, *Lucas* v. *Mitchell*, 3 A. K. Marsh. 244, *Minns* v. *Morse*, 15 Ohio 568, and *Dawson* v. *Ellis*, 1 Jacob & Walker's Ch. Rep. 503, are cited in support of this proposition.

But we think the true rule is, that the vendor makes his election to treat the prior verbal contract as void, whenever he makes a valid agreement of sale in the face of it, and that the intermediate purchaser, in such a case, is shielded by the statute, as well as the vendor. In equity, a contract for the sale of land is not merely executory, but the vendee becomes the owner, and the vendor is seized in *trust* for him, and has a mere lien on the land for the purchase money, upon the maxim that " equity looks upon that as done which is agreed to be done." The contract, however, which in equity will make him the owner, must be a valid contract; must be such that he has *a right to pray* a specific performance of it. Equity looks upon that as done which is thus agreed to be done, and it relates back to the contract. But nothing is looked upon in equity as done, but what ought to be done; not what might have been done. Nor will equity consider a thing as done except in favor of those who have a right to pray that it may be done. 2 Story's Eq. Jur., § 792, and authorities there cited.

It is proper to remark that the case of *Dawson* v. *Ellis*,

*supra,* and the case of *Crabb* v. *Bull,* 2 Caines' Cas. 301, cited by *Browne* in his work on the Statute of Frauds, do not sustain the proposition contended for. And we think that the *Kentucky* cases are founded on a false premise, viz: the *moral* obligation resting on the vendor to fulfill his verbal agreement. The law secures to the vendor the right to elect to treat such an agreement as void. There is no moral turpitude involved in the act; and once having made that election, by a valid sale in contravention of the verbal agreement, we think he cannot defeat the rights of the intermediate purchaser by a conveyance, unless on the full payment of the purchase money, without notice of the valid agreement.

The appellants contend that the purchase money tendered ought to have been *brought into court.* This is not necessary. In *Irvin* v, *Gregory,* 13 Gray 215, in delivering the opinion of the court, SHAW, C. J., says: "The vendee does not make a strict unconditional tender, but only an offer upon receiving the conveyance, without which he is not obliged to pay. When money is brought into court, with a plea of tender, it is an admission of the party bringing it that the adverse party is entitled to it, and may take it out when he pleases. But in a suit for specific performance, it is sufficient for the plaintiff to offer by his bill to bring in his money, whenever the same is liquidated, and he has a decree for performance."

According to the English practice, the purchase money is never paid into court, except upon the order of the court. Dart. on Vendors 516; Fry on Spec. Per. 490. Purchase money paid into court is the property of the vendors.

The tender was made to *Matthew R. Hunter,* when the purchase money became due, and *before* he conveyed to *Moses Hunter.*

The defendants insist that the court should have allowed *interest* from the time the purchase money was tendered. *Thompson* tendered the interest due when the tender was

made, and that in all the interest the defendants were entitled to. This question was directly before the court in 5 Ala. R. 761, in which the court held that the defendant was not entitled to interest. "The presumption," says the court, "is that the money is unproductive in the vendee's hands, and he is not chargeable with interest, unless he used it, *which use it devolves on the vendor to prove.*" No tender is necessary where the vendor denies the contract. 6 Wis. 127.

When payment is to be made upon a conveyance being made, no interest is allowed until a deed is tendered. So though the purchaser took possession, if the land is vacant and unproductive. *Stevenson* v. *Maxwell*, 2 Sandf. Ch. 273. So when the vendee tenders the purchase money, and the vendor refuses it. *January et al.* v. *Martin*, 1 Bibb. 586. So whenever the vendor is the cause of the contract not being executed.

The judgment of the court below is affirmed, with costs.

*N. B. Taylor* and *D. Moss*, for appellants.

*S. Major*, for appellee.