## DAUGHDRILL vs. SWEENEY.

## PRICE vs. SWEENEY.

## FRICKE AND WIFE vs. SWEENEY.

[BILLS IN EQUITY FOR REDEMPTION, CANCELLATION OF MORTGAGE, &c.)

1. *Tender.*—A mortgagor, asking a redemption, cancellation of the mortgage, &c., on the ground of a tender made and refused, must pay into court, at the time of filing his bill, the amount of money admitted to be due, and make an appropriate averment in his bill as to such payment; otherwise, his bill is without equity.

APPEAL from the Chancery Court at Mobile.
Heard before the Hon. N. W. COCKE.

ON the 20th October, 1865, James H. Daughdrill filed his bill in equity against John Sweeney, asking the cancellation of a mortgage, and of the promissory note which it was given to secure, an injunction of a sale under the mortgage, a redemption of the mortgaged premises, an account, and general relief. The mortgage, which was made an exhibit to the bill, and which was dated the 2d May, 1860, was given to secure the payment of a promissory note for three thousand dollars, executed by said Daughdrill, dated the same day with the mortgage, payable twelve months after date, to said Sweeney or order, negotiable and payable at the Bank of Mobile; conveyed several city lots in Mobile, and contained a power of sale by the mortgagee on default being made in the payment of the note at maturity. The bill contained the following allegations, as to the tender by the complainant of the amount due on the mortgage debt, and its refusal by the defendant: "After the maturity of said note, to-wit, on the 19th October, 1865, your orator tendered and offered to pay to the said defendant the full amount of the said promissory note, with the interest due thereon, in United States treasury-notes,

Daughdrill et al. v. Sweeney.

issued under authority of an act of congress; by the terms whereof, the same were made lawful money, and a legal tender for all debts, public and private, within the United States, except import duties, and some other national dues; said notes being of the kind and description commonly called 'legal-tender notes;' and thereupon your orator requested and demanded of said defendant, on his part, to give up said promissory note, and to cancel said mortgage. But said defendant refused, and still refuses, to receive the amount due on the said promissory note, with the interest thereon, so tendered to him by your orator as aforesaid; and refused, and still refuses, to give up said promissory note, and to cancel said mortgage; and is now proceeding to advertise said premises for sale under said mortgage," &c. In the prayer of the bill, the complainant renewed his offer to pay, in these words: "And that upon full payment by your orator of the amount of the said promissory note, with the interest due thereon, in such current treasury-notes of the United States as are declared by law to be lawful money and a legal tender; which payment your orator now offers to make to the said defendant," &c.

On the 6th November, 1865, Caleb Price filed his bill in equity against said John Sweeney, together with Augustus Brooks and Charles T. Ketchum, the two latter as partners doing business under the firm name of Brooks & Ketchum; asking an injunction of a sale under a mortgage, and general relief. The mortgage was made an exhibit to the bill, and was dated the 19th November, 1859. It purported to be given to secure the payment of a promissory note for five thousand dollars, which was executed by said Price, of even date with the mortgage, payable to the order of said Sweeney, twelve months after date, negotiable and payable at the Bank of Mobile; conveyed several city lots in Mobile, and contained a power of sale by the mortgagee on default being made in the payment of the note at maturity. The bill alleged, that the mortgagee advertised the mortgaged premises for sale on the 4th November, 1865, the note not having been paid; that the complainant afterwards, on specified days, made ineffectual efforts to find said Sweeney, for the purpose of tendering to him, in treasury-notes of

the United States, commonly called "legal-tender notes," the amount due on the mortgage debt; that Sweeney avoided him, and kept out of his way, for the purpose of preventing such tender; that the complainant then tendered to said Brooks & Ketchum, who, as auctioneers and agents for said Sweeney, had advertised the premises for sale under the mortgage, " the full amount of principal and interest due on said note, together with a sufficient sum to cover all costs, expenses of advertising, &c.;" that this tender was made in treasury-notes of the United States, commonly called "legal-tender notes," and was refused by said Brooks & Ketchum, " who demanded gold, or its equivalent in currency"; and that the complainant " now proposes to bring into this honorable court, when directed by the court so to do, said sum of money."

On the 20th October, 1865, Charles Fricke, and Gertrude, his wife, filed their bill in equity against said John Sweeney; praying an injunction of a sale under a mortgage, a redemption of the mortgaged premises, a cancellation of the mortgage, and of the note which it was given to secure, and general relief. The mortgage was not made an exhibit to the bill, though reference was made to it for a description of the premises conveyed. According to the allegations of the bill, the mortgage was dated the 1st February, 1860; was given to secure the payment of a promissory note for three thousand dollars, of even date with said mortgage, signed by said Charles Fricke, and payable twelve months after date, to said Sweeney or order, at the Bank of Mobile; conveyed several city lots in Mobile, and contained a power of sale on default being made in the payment of the note at maturity. The allegations of the bill as to a tender were in these words : "During the war that has just closed, said Sweeney was unwilling to receive Confederate treasury-notes, and quietly waited, making no effort to sell said premises; but, within a short time, has become pressing for his money. On yesterday, the 19th October, 1865, your orator Charles Fricke tendered to him, in money which was genuine, and which was a good and lawful tender according to law, the whole amount of principal and interest due on said note, and re-

quested him to accept the same, and to deliver up said mortgage and note; but said Sweeney refused to accept said money, and refused to surrender up said note and mortgage, and is about proceeding to sell said premises, notwithstanding your orators are willing to pay said mortgage, and to redeem said property, which they are willing to do, and now offer to do the same."

After the filing of the answers, the chancellor dissolved the injunction in each case, for want of equity in the bills; and his decrees were here assigned as error.

ANDERSON & BOYLES, for the appellants.—The act of congress approved March 3, 1863, which makes treasury-notes, issued under its provisions, lawful money and a legal tender, is not obnoxious to objection on constitutional grounds, and is applicable to contracts made prior to its passage. Both these points have been expressly decided, in several recent cases, in New York, Iowa, and Pennsylvania, some of which are not yet officially reported.— *Metropolitan Bank v. Vandyck*, 27 N. Y. 400; *Meyer v. Rosevelt, ib.; Wambold v. Schiltching*, 16 Iowa, 243. In the case of *Thompson v. Riggs*, as reported in the newspapers, the same decision has been made by the supreme court of the United States. The validity of the act may be maintained on the principles established by the cases of *McCullough v. Maryland*, 4 Wheaton, 406; and *Osborn v. United States Bank*, 9 Wheaton, 738.

THOS. H. HERNDON, *contra*.—1. Admitting the constitutionality of the act of congress, in deference to the repeated adjudications of the courts of the country, it is insisted that said act applies only to debts created before its passage. A retroactive effect, which is necessarily unjust, will never be given to a statute, even when it does not impair the obligation of contracts, unless such construction is required by the express words of the statute.—*Dash v. Vankleek*, 7 Johns. 477–509; 1 Kent's Com. 508; 19 Vermont, 90; 21 Conn. 355; 19 Ala. 709.

21

2. The bills ought to have stated the amount of money tendered, so that the court might see that it was sufficient; and the money ought to have been paid into court when the bills were filed.—*Taylor v. Reed*, 5 Monroe, 36; *Spoor v. Phillips*, 27 Ala. 193; 11 Iowa, 30; 30 Vermont, 577; 1 Car. & P. 288; 3 Car. & P. 342; 34 Ala. 126; 2 Spence's Equity, 653, 675.

JUDGE, J.—These cases being of the same character, and inasmuch as the decision of one question involved will be decisive of them all, they will be considered together.

Equity, in many cases, adopts and follows the analogies furnished by the rules of law. By a statute of this State, "a plea of tender of money, or of a thing in action, must be accompanied by a delivery of the money, or such thing in action, to the clerk of the court."—Code, § 2245. The analogy of such a plea, to each of the bills in these cases, is sufficiently striking to authorize it to be followed. In *Taylor v. Reed*, (5 Monroe, 36,) it was held, that if a party "pretends to avail himself of the plea of tender in equity, because he could not make it at law, he ought to be held to as great strictness as he would be held to at law."—See, also, *Spoor v. Phillips*, 27 Ala. 193.

If a legal tender was made, of the money acknowledged by the complainant in each case to be due, it should have been followed up by a payment of the money into court, at the time of filing their respective bills; and a compliance with this requisition should be shown by an appropriate averment in each bill. Such an averment not having been made, the bill in each case is without equity.

We waive all consideration of the question as to the validity of a tender, made in the treasury-notes declared by act of congress "lawful money and a legal tender in payment of all debts," &c., because it is not necessary to a decision of the cases before us. We are informed, however, that the supreme court of the United States has recently decided this question in the affirmative; but we have not had access to the opinion. We waive, also, all consideration of the other questions presented in each case, con-

nected with the alleged tender, some of which have been so ably argued by counsel for the appellees.

The decree of the chancellor in each case, dissolving the injunction, is affirmed, with costs.