Morrison *et al. v.* Jacoby *et al.*

No. 12,833.

MORRISON ET AL. *v.* JACOBY ET AL.

TAX SALE.—*Purchaser's Lien.*—*Void Sale.*—The statutes of this State vest in the purchaser at a tax sale, whether he holds under a deed or under a certificate merely, a lien upon the land upon which the taxes were leviable, in all cases except where the sale is void because the land was not subject to taxation, or because the taxes had been paid before sale, or because the description is not sufficient to identify the land.

SAME.— *Injunction.*— *Complaint.*—*Tender.*— *Bringing Money into Court.*— A complaint to enjoin the execution of a deed to the purchaser at a tax sale is bad unless it shows a sufficient tender, and that the tender is kept good by bringing the money into court. An averment that the plaintiff is ready and willing to pay, and offers to pay, whatever sum shall be adjudged to be due the certificate-holder, but not showing that the money is brought into court, is insufficient.

From the Kosciusko Circuit Court.

*L. H. Haymond* and *L. W. Royse,* for appellants.

*J. S. Frazer, W. D. Frazer, L. C. Jacoby, J. Morris* and *J. M. Barrett,* for appellees.

ELLIOTT, J.—Lands of the appellees were sold for taxes and bought by the appellant Morrison. Certificates were issued to him by the proper officer. From these sales the appellees seek relief in this suit. Their complaint shows that the sales were ineffectual to convey title, but it does not show that the lands were not subject to taxation, nor that the description was not sufficient to identify the land, nor that the taxes had been paid. The relief prayed is an injunction against the appellants, restraining the officers from executing a deed to Morrison on the certificate issued to him.

The burden of showing that land was not subject to taxation, and that it was not described, as well as that the taxes were paid, is on the party who resists the enforcement of the lien. *Scott* v. *Millikan,* 104 Ind. 75; *Earle* v. *Simons,* 94 Ind. 573. The presumption on these points is, therefore, against the appellees.

An illegal sale may be avoided and the acquisition of title

prevented where there are irregularities in the proceedings of the officers ; but the avoidance of the sale for such cause, or for similar causes, does not destroy the lien of the State, to which the purchaser is subrogated. A sale may be totally ineffectual to convey title and yet carry the lien. The only causes which will so completely impair the efficacy of a sale as to destroy the lien are those specifically enumerated in the statute.

The policy of the law is to compel the payment of taxes, and to attain this end, penalties are imposed upon the citizens who fail to pay their taxes as the law requires. It is obvious that if no penalty were attached there would be no compulsion, and revenues essential to the conduct of the government could not be collected. Recognizing this principle, we have in many cases held that, although a sale may not be sufficient to carry title, it will, nevertheless, be sufficient to carry a lien, and with it the right to the penalty provided by law. The general doctrine upon this subject is so well and strongly stated by NIBLACK, J., in *St. Clair* v. *McClure*, 111 Ind. 467, and so fully applies here, that we quote what was there said :

" In the recent case of *State, ex rel.*, v. *Casteel*, 110 Ind. 174, it was, upon full consideration and a careful review of our decided cases, held that, under section 6487, R. S. 1881, when construed in connection with other provisions relating to the same subject, there were only three contingencies in which the sale of lands for delinquent taxes is absolutely void—that is to say, ineffectual for any purpose—the first being where the lands shall not have been liable to taxation ; the second where the taxes have been paid before the sale ; and the third where the description on the tax duplicate is so imperfect as to fail to identify the land. It was further held that, under the succeeding section (6488), the lien, which the State has on the lands so sold, is, in all other cases, transferred to, and vested in, the purchaser, his heirs or assigns ; and that, in case the sale fails to convey title, the amount

paid by the purchaser may be recovered back by the enforcement of his acquired lien against the lands.

" These holdings led us to the very natural conclusion that no sale of lands for taxes due, which transfers to, and vests the lien of the State in, the purchaser, can properly be treated as, or adjudged to be, a void sale, and to that conclusion we still adhere.

" Our cases have quite uniformly recognized the doctrine that if the taxpayer has sufficient personal property to pay his taxes at the time his lands are sold to pay them, the sale is ineffectual to convey title ; but the rule of decision that the sale of lands for taxes, under such circumstances, transfers to the purchaser the lien of the State, is quite, if not equally, well recognized. *Ward* v. *Montgomery*, 57 Ind. 276 ; *Flinn* v. *Parsons*, 60 Ind. 573 ; *Hosbrook* v. *Schooley*, 74 Ind. 51 ; *Bender* v. *Stewart*, 75 Ind. 88 ; *Lawson* v. *Hilgenberg*, 77 Ind. 221 ; *Sloan* v. *Sewell*, 81 Ind. 180 ; *Parker* v. *Goddard*, 81 Ind. 294 ; *Orecelius* v. *Mann*, 84 Ind. 147 ; *Jenkins* v. *Rice*, 84 Ind. 342 ; *Schrodt* v. *Deputy*, 88 Ind. 90 ; *Locke* v. *Catlett*, 96 Ind. 291 ; *Hilgenberg* v. *Board, etc.*, 107 Ind. 494 ; *Ludlow* v. *Ludlow*, 109 Ind. 199 ; *State, ex rel.*, v. *Casteel, supra.*

" This doctrine, and the rule of decision stated, rest upon the established theory that where a taxpayer owns both real and personal property, the latter is primarily liable for all the taxes assessed against him, but that a lien nevertheless attaches to the real estate for accruing taxes, by which it becomes secondarily, and, if need be, ultimately, liable for the payment of such taxes, and upon the further theory that the lien which so attaches is not divested by the failure of the proper officer to seize and sell personal property, but is transferred to, and vested in, the purchaser when the real estate is sold for the non-payment of the taxes."

In *McKeen* v. *Haskell*, 108 Ind. 97, it was held, in accordance with the general principle asserted by our cases, that, where a lien is transferred to the purchaser, although the

sale does not carry title, the purchaser is entitled to the penalty prescribed by law.

It was said in *Scott* v. *Millikan, supra,* in speaking of the lien, that " It has been held, and properly so, that these statutes do not authorize the purchaser at a tax sale to institute proceedings and enforce such a lien and recover the increased penalties during the two years allowed for redemption, but that in an action by the land-owner, even before the expiration of the two years, the purchaser will be protected. *Montgomery* v. *Aydelotte,* 95 Ind. 144; *Reed* v. *Earhart,* 88 Ind. 159. See, also, *Brown* v. *Fodder,* 81 Ind. 491."

In *Peckham* v. *Millikan,* 99 Ind. 352, the question was fully examined and a like conclusion reached, and this is true of *Helms* v. *Wagner,* 102 Ind. 385. The reason upon which the decisions rest is thus stated in *Scott* v. *Millikan, supra:* " The purpose of these statutes is to facilitate the collection of taxes, by inflicting penalties upon the delinquent owner, and holding out a reward to the purchaser."

The provisions of the statute are in themselves quite clear. The act of 1881, with much particularity, provides on what terms land may be redeemed before a deed is executed, graduating the penalty according to the length of time the taxpayer suffers his land to remain unredeemed. R. S. 1881, section 6466. The act of 1872 was even more stringent and explicit in its provisions. 1 R. S. 1876, pp. 118, 129. The act of 1883 carries out the same general principle. Acts of 1883, p. 96.

It can not, therefore, be doubted that the policy of our revenue laws is to induce purchasers to buy at tax sales, and to compel the citizens to pay their taxes. For this reason reward is offered the purchaser and a penalty visited on the delinquent citizen.

In furtherance of this general policy, the Legislature provided for the security of the purchasers by enacting that if the title failed they should have a lien for taxes, interest,

penalties and costs.    This provision is embodied in the acts of 1872, 1881 and 1883.

In all of the cases we have cited, as well as in many others, it has been uniformly held that the lien of the State will pass to the purchaser, even though the sale does not give the slightest ground to an absolute title.    The principle has been applied to sales of property at private sale.  *McWhinney* v. *City of Indianapolis,* 98 Ind. 182;  *Peckham* v. *Millikan, supra.* It has been, indeed, applied in almost every form which the question could assume.    *Sloan* v. *Sewell,* 81 Ind. 180, and cases cited;    *Culbertson* v. *Munson,* 104 Ind. 451;  *Watkins* v. *Winings,* 102 Ind. 330.

The current of judicial opinion runs with our own.    The Supreme Court of Kansas has declared in many cases that the lien of the State vests in the purchaser.    In the latest of these cases it was held that the purchaser might enforce the lien for taxes, interest, penalty and costs, although the deed was void on its face.    *Stetson* v. *Freeman,* 14 Pac. Rep. 256 ; *Smith* v. *Smith,* 15 Kans. 290 ;  *Belz* v. *Bird,* 31 Kans. 139 ; *Harris* v. *Curran,* 32 Kans. 580.

In *Barke* v. *Early,* 72 Iowa, 273, it was held that, although the sale was invalid, yet the defendants were entitled to " recover all taxes for which the land was sold, and taxes subsequently paid by them, with penalties, interest and costs, provided by the statute to be paid upon redemption from a tax sale."

The subject was fully discussed in *McLaran* v. *Moore,* 60 Miss. 376, and it was said, in speaking of counsel's argument that there was no authority to sell :  " This is true, and because of want of power no title to the land passed by the conveyance, and for this reason complainant failed to recover the land in ejectment.    But title or a valid conveyance is not necessary to the enforcement of the statutory lien.    On the contrary, if a valid conveyance could be shown, it would be fatal to the complainant's bill, for no man may enforce a lien upon his own lands.    There can not be degrees of voidness,

and one void title is necessarily as ineffectual as another. A sale by the collector under a void assessment, or for taxes levied at the wrong time or place, or a sale made at a wrong time, would all be void; but neither a valid assessment, levy, nor sale is necessary to support the claim to the lien conferred by section 1718, as has been distinctly declared in the cases heretofore cited."

In other cases the question is discussed by the court from whose opinion we have quoted. *Cogburn* v. *Hunt*, 56 Miss. 718; *Mayer* v. *Peebles*, 58 Miss. 628.

The court, in *White* v. *Shell*, 84 Mo. 569, speaking of counsel's argument that a void sale did not transfer a lien, said: "This line of argument at once sets at defiance and nullifies the statute above quoted; for if the proceedings are regular, the tax purchaser will get the title, and he could not rightfully be defeated in any action by or against him to recover the property."

Our conclusion on this branch of the case is, that the statutes, since 1872, secure to the purchaser at a tax sale, not void for the reasons expressly enumerated in the statute, a lien upon the land upon which the taxes were leviable.

This lien, as is evident from the statutes and from our decisions, vests in the purchaser holding under a certificate. R. S. 1881, section 6466; 1 R. S. 1876, p. 124; Acts of 1883, p. 96.

If there were any doubt on the general provisions it is dispelled by the clause which reads thus: "In case the party purchasing the land, or his assigns, fail to take a tax deed for the land so purchased, within six months after the expiration of the two years, no interest shall be charged or collected from the redemptioner after that time." Section 6466, *supra.*

It is a familiar rule of statutory construction, that no word or clause of a statute shall be deemed meaningless if it can be possibly avoided, and this clause would be meaningless if only purchasers holding under a deed were entitled to the

benefit of the general statutory provisions. But statutes are to be construed as forming a uniform system, and so construing the statutes for the collection of taxes, this clause finds an appropriate place. *Robinson* v. *Rippey*, 111 Ind. 112, and cases cited.

We agree with the appellants' counsel that the lien of the State passed to Morrison, because the complaint does not show that the sale was void for any of the reasons enumerated in the statute. While agreeing with counsel upon this point, and upon the additional point that a tender was necessary, we can not agree that the complaint does not show an offer of the proper amount. It is true that the exact amount is not stated, but it is averred that it was " the full amount of taxes, interest, penalty, costs and charges." This averment is uncertain, but the remedy for uncertainty is seldom by demurrer. In a very great majority of cases the appropriate remedy for the defect under immediate mention is by a motion to make more specific. That is the appropriate remedy in this case.

Counsel for appellants contend that a tender is required in all such cases as this, and that it must be kept good by bringing the money into court. In support of this proposition they cite *Harrison* v. *Haas*, 25 Ind. 281 ; *Jones* v. *Summer*, 27 Ind. 510; *Lancaster* v. *DuHadway*, 97 Ind. 565 ; *Rowe* v. *Peabody*, 102 Ind. 198.

Appellees' counsel, in a very able argument, insist that, although a tender is necessary, still it is sufficient without bringing the money into court. They base their argument upon what is said to be the rule in equity, and affirm that it is enough to aver a tender and an offer, accompanied by a readiness and willingness to pay the money, and that this is sufficient, without actually bringing it into court. In support of this position a number of cases are cited, and we have examined them with care.

The first of the cases cited is that of *Hunter* v. *Bales*, 24 Ind. 299, which asserts the doctrine of *Irvin* v. *Gregory*, 13

Gray, 215, where it was said: " The vendee does not make a strict unconditional tender, but only an offer upon receiving the conveyance, without which he is not obliged to pay. When money is brought into court, with a plea of tender, it is an admission of the party bringing it that the adverse party is entitled to it, and may take it out when he pleases. But in a suit for specific performance, it is sufficient for the plaintiff to offer by his bill to bring in his money, whenever the sum is liquidated, and he has a decree for performance." *Lynch* v. *Jennings,* 43 Ind. 276, asserts a similar doctrine.

It is manifest that these cases are not in point. This is so, because here the lien of the appellant is fixed and certain, and, therefore, of a character that required unconditional payment or an absolute tender before its enforcement could be enjoined.

In *Spath* v. *Hankins,* 55 Ind. 155, the plaintiff sought to compel the enforcement of an agreement to redeem, and the question of tender was not considered or discussed, although it seems, perhaps, to have been tacitly assumed by court and counsel that an offer to pay, without an actual tender, was sufficient.

The decision in *Ruckle* v. *Barbour,* 48 Ind. 274, was, that where a sheriff's sale is invalid, it may be set aside although there was no tender of the amount of the judgment. It is clear that the case last cited is not in point, for the reason that the purchaser had not paid any money on his bid, while here Morrison had paid what it was the duty of the appellees to pay.

In *Lancaster* v. *DuHadway, supra,* the question arose, precisely as it does here, upon a demurrer to the complaint, and in just such a suit as this, and it was ruled that the complaint was bad. It was there said: " The appellee insists that the complaint was insufficient, because the appellants do not aver that they bring the money tendered into court for him, or offer to pay it upon obtaining the relief demanded.

This objection is well taken." The question was decided, and counsel are in error in asserting that what was said on the subject is mere *dicta*. Upon the principle of *stare decisis*, we must adhere to this ruling unless we are certainly forced to the conclusion that it does not correctly declare the law. This we are not willing to affirm. There is good reason for the decision. The amount due the defendants is due unconditionally, is liquidated, and is a claim which equity and law made it the duty of the plaintiffs to pay. In such a case money ought to be paid into court, so that the defendant may take it out if he chooses. It is not equitable that the plaintiffs, by merely offering to pay what they long before should have paid, should be allowed to keep the money from the defendants until a final decree puts an end to the controversy. Surely, the plaintiff asking equity in such a case must do more than make a mere offer to pay only in the event that it is so ordered, or after the lien is judicially declared. It is no hardship upon him to pay the money into court, while his failure to do so might work injury to the defendant. It would, at all events, abridge the right of the defendant to elect to take it out. We think the ruling is in harmony with our decisions in analogous cases, and in subsequent cases *Lancaster* v. *DuHadway, supra*, has been cited with approval. *Jones* v. *Ewing*, 107 Ind. 313 ; *Shannon* v. *Hay*, 106 Ind. 589 ; *Russell* v. *Cleary*, 105 Ind. 502; *Rowe* v. *Peabody, supra; Peckham* v. *Millikan, supra*.

It is not easy to perceive why, in such a case as this, there should be any distinction between actions at law and suits in equity. We think there is really none, and what was said of a party in a somewhat similar case may be here appropriately said of the appellees : "If he pretends to avail himself of the plea of tender in equity, because he could not make it at law, he ought to be held to as great strictness as he would be held to at law." *Taylor* v. *Reed*, 5 Monroe, 36. In speaking of a bill to redeem from a mortgage, it was said, in *Daughdrill* v. *Sweeney*, 41 Ala. 310 : " If a legal tender

was made, of the money acknowledged by the complainant in each case to be due, it should have been followed up by a payment of the money into court, at the time of filing their respective bills; and a compliance with this requisition should be shown by an appropriate averment in each bill. Such an averment not having been made, the bill in each case is without equity."

For the defect in the complaint we have pointed out the judgment must be reversed.

Filed Dec. 22, 1887.

## ON PETITION FOR A REHEARING.

ELLIOTT, J.—The appellees' counsel, in their brief on the petition for a rehearing, thus state the point which they argue: "Though other questions are stated in the petition for a rehearing, the only one which we desire to present is whether the complaint, or any paragraph of it, is bad because it is not averred that the money alleged to have been tendered to Morrison is brought into court for his use and benefit."

The contention of counsel is, that an averment that the plaintiffs " are able, ready and willing to pay, and offer to pay, whatever sum shall be found or adjudged the defendant in this action on account being taken, or otherwise, and they offer to pay whatever sum the court shall adjudge in this case," is sufficient, and that it is not necessary to bring the money into the court for the benefit of the defendant. The argument proceeds upon the theory that the equity rule that an offer without an actual tender is sufficient, governs the case, and we are referred to the cases which hold that in suits for specific performance a strict tender is not necessary. These authorities are, it is manifest, not in point in an action like this, where the plaintiff asks to be relieved from a demand which the law imperatively made it his duty to pay, and which another had paid for him. But the cases are by no means harmonious upon this question, even in cases of specific

performance, for, as Mr. Pomeroy shows in his note, many of the cases require a strict tender. 3 Pomeroy Eq. Jur., p. 453, n.

As we said in our former opinion, there are cases where an offer to pay should be deemed sufficient, as, for instance, where the amount can not be ascertained without an accounting and an adjustment of the accounts between the parties; but we showed, as we still think, upon principle and authority, that a taxpayer should not be allowed to secure the cancellation of a tax certificate merely upon an offer to pay when the decree is entered. He ought not to be allowed to secure a cancellation of the certificate without paying, or at least making a strict tender of the money which it was his duty to pay, and which he admits to be due, for the duty is incontestable, and there is no need for an accounting nor for an adjustment of accounts.

There are cases where an offer is all that need be pleaded, as, for instance, where the plaintiff is bound to pay only on condition that the defendant execute a deed to him. Of that class are the cases cited by appellees. *Hunter* v. *Bales,* 24 Ind. 299; *Lynch* v. *Jennings,* 43 Ind. 276.

By no possible stretch within the bounds of reason can that class of cases be made relevant here, for here there is no condition; the plaintiffs are bound absolutely and unconditionally to pay what the defendant paid for them before they can secure a cancellation of his certificates or a destruction of his lien. There is a condition precedent to their right of relief, but not the semblance of a condition obstructs the defendant's right to the money paid for the plaintiffs.

We are referred to this statement of Mr. Pomeroy: "In general the rules of equity concerning the necessity of an actual tender, are not so stringent as those of the law." 3 Pomeroy Eq. Jur., p. 453, n.

This we affirmed in our former opinion; but we also affirmed that in a case like this equity required a strict tender. Mr. Pomeroy, in the same note to which counsel refer, cites authority showing that there are cases where an actual tender

is required.   If there are such cases it is difficult to perceive why this is not one of them, for it is not easy to conceive one in which equity more strongly demands either an actual payment or an absolute tender.

Counsel say :  " We ask the careful attention of the court to the following tax cases decided by the Supreme Court of the United States :   *Bennett* v. *Hunter,* 9 Wall. 326 ; *Tacey* v. *Irwin,* 18 Wall. 549 ;   *Atwood* v. *Weems,* 99 U. S. 183 ; *Hills* v. *Exchange Bank,* 105 U. S. 319." These cases have had careful study, but without benefit to the appellees.   In these cases it is decided that a tender, under the act of Congress, before a sale for direct taxes, is valid, although not made by the owner of the property.   Obviously, they do not bear upon the case before us, where the question is, what must be done by the taxpayer to secure the cancellation of a certificate issued after sale to a purchaser who has acquired the lien of the State ?

At least one of the distinguished members of the Supreme Court has emphatically declared a doctrine directly opposed to that for which appellant contends.   We refer to the case of *Bailey* v. *Atlantic, etc., R. R. Co.,* 1 Cent. L. J. 502, where Mr. Justice MILLER, DILLON and TREAT, JJ., concurring, declared that an allegation that the plaintiff " is ready and willing to pay " is not sufficient.  We may observe here, as well as elsewhere, that in the well reasoned case of *Hagaman* v. *Commissioners,* 19 Kans. 394, that decision is fully approved.

The case of *Smith* v. *Humphrey,* 20 Mich. 398, does not decide what is required in a case like this, for the question of the sufficiency of the bill upon the point here involved was not before the court.   It was neither discussed nor decided.   It is true that the court reversed the case, with instructions to modify the decree so as to require the plaintiff to pay the sum due, but it did not discuss the question we have before us.  The court said :  " But although we think the circuit judge was right in his construction of the act of

1869, we do not understand the principle on which he enjoined the sale of the lands, without making it a condition that the complainant should pay the sum which was lawfully demandable, and which had been previously tendered." This exhibits the point of the decision, so far as it even remotely approaches the question here under discussion, and certainly the case can not be considered as authority upon that question.

We have thus examined the cases outside of our own reports to which the appellees refer, and we feel confident that they do not conflict with what we here decide, or what we have heretofore decided, nor with what the authorities cited in our former opinion declare.

We have not contented ourselves with an examination of the authorities cited by counsel, but have searched for others. We find, as we declared in our original opinion, and declare in this, that in many cases, but not in all, an offer is sufficient in equity where a strict tender would be exacted at law. An offer is not in strictness a tender, nor, as appears, when we go to the foundation, is it so regarded in equity. This a simple illustration will make clear. It is necessary, in a case like this (and so much the counsel concede), to make a tender of lawful money before suit, and surely an offer would not supply the place of a tender. We suppose no one will contend that a mere offer would be sufficient. At all events, if an offer is the same as a tender, all our decisions, from first to last, are radically wrong. It is not, we affirm, the same as a tender; and an offer where a tender is required, whether in law or in equity, whether before suit or after suit, can not take the place of a tender.

There was a reason for the equity doctrine of offer or modified tender in former times which does not now exist, and where the reason of a rule fails, so, also, does the rule. The reason for the rule was that, where the mortgagor failed, or where one occupying a similar position failed, in an effort to redeem from the mortgage, his adversary acquired an imme-

Morrison *et al. v.* Jacoby *et al.*

·diate title. No sale was essential. The title was lost at once. No other thing was essential to vest title in the one party and take title from the other except the decree barring the re-·demption. But it is now very different even in mortgage foreclosures. A sale is essential to divest the one party of title and vest it in the other. The holder of a lien under the present law does not obtain an immediate title. He can only acquire title after sale on the decree. He must suffer the delay incident to a sale, and, in ordinary cases, he must pay the expenses occasioned by it if he acquires title, for they are usually taken out of the bid or paid by him. It is very apparent, therefore, that the reason for the old rule has entirely failed· even with respect to mortgages.

Not only has the reason for the old rule failed even in mortgage foreclosures, but there was never any reason for applying it to the foreclosure of tax liens. It is unjust and unconscionable as applied to such liens. Not only does it ·burden one who assists the government in collecting its revenues with the annoyance of delay and expense, but it also, in effect, rewards one who has failed to do what it is the duty of every good citizen to do—contribute his just proportion to the maintenance of the government.

It was said, with great force and elegance, in *Harrison* v. *Haas,* 25 Ind. 281, by RAY, J. : " The plaintiff has not waited until the defendant should bring his action for pos-·session of the property, when his defence could be made in a court of law, but has asked the court to interfere under its equity power and protect. him from the consequences of his own default. The complainant does not allege that the tax was illegal, but that through his own failure to pay what was due, the officer had proceeded to sell his real estate when he had personal property which was first liable to be sold. He now asks that the purchaser who has paid the tax due from him, and which was before sale a legal lien upon his land, ·shall be required to deliver up his certificate of purchase,

and thus, the taxes paid and the lien removed, the plaintiff shall go acquit of the debt and the purchaser suffer the loss. He asks a court of equity to deprive a purchaser, who has paid the taxes legally due from the plaintiff, of the color of title, which is his only means of enforcing the moral obligation resting upon the plaintiff to make good to him the sum which, through the default of the plaintiff, the officer, under color of law, induced him to pay in discharge of the plaintiff's debt. He asks a court of equity to place him in a better position than he would have occupied if he had at the proper time paid the taxes legally assessed against him, and which were a lien upon his land."

It would require more time than we can give to the work to quote from the great number of decisions upon this subject in our reports, but an examination of them, made for the second time, strengthens our conviction that in discussing the subject the court has had in mind strict tenders, and not mere offers. In a few cases, it is true, the word " offer " has been used in a general way, but these cases are very rare. At all events, there is no case which holds that an offer is sufficient, so far as our search enables us to judge, and certainly none has been cited by counsel. In classing *Lancaster* v. *DuHadway*, 97 Ind. 565, among the cases directly affirming the necessity of a strict tender, the court, through the fault of the writer, was in error, and, although that case does affirm the general doctrine, too much importance was attached to it through the writer's mistake in quoting from it. That case does, also, fully answer the appellees' argument that the tender relieved the taxpayer from payment, for it does hold that tender does not discharge the lien. We suppose it clear, that where a tender is spoken of, as it is in nearly all of our cases, it means a strict tender, and not a mere offer.

We have already referred to an opinion of Mr. Justice MILLER in support of our conclusion, and we quote what he said in speaking for the court in the elaborately argued and thoroughly considered *State Railroad Tax Cases*, 92 U. S.

575 (616): " It is a profitable thing," said the court, " for corporations or individuals whose taxes are very large to ob-. tain a preliminary injunction as to all their taxes, contest the case through several years' litigation, and when in the end it is found that but a small part of the tax should be permanently enjoined, submit to pay the balance. This is not equity. It is in direct violation of the first principles of equity jurisdiction. It is not sufficient to say in the bill, that they are ready and willing to pay whatever may be found due. They must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted."

The principle declared in the case from which we quote is a sound one. It is so, because a tender properly made stops all interest, and, certainly, he who makes it ought not to be allowed to retain the money through a course of litigation and still be relieved from the payment of interest. It is so, because a tender where a sum is unconditionally due is only good when the money is brought into court. It is so, especially, where the defendant, if he succeeds, can only enforce his decree by a sale of the property, for the court can not give him title without a sale. All that it can do is to establish a lien and order a sale.

The case is one to which the rule declared in *Taylor* v. *Reed*, 5 Monroe, 36, strongly applies. There it was said : " If he pretends to avail himself of the plea of tender in equity, because he could not make it at law, he ought to be held to as great strictness as he would be held to at law."

The case comes fully within the rule laid down in *Daughdrill* v. *Sweeney*, 41 Ala. 310, where it was said : " If a legal tender was made, of the money acknowledged by the complainant in each case to be due, it should have been followed up by a payment of the money into court, at the time of filing their respective bills ; and a compliance with this requisition should be shown by an appropriate averment in each

bill. Such an averment not having been made, the bill in each case is without equity."

In *Hagaman* v. *Commissioners*, 19 Kans. 394, the court said : " To the suggestion of counsel for the plaintiff, that if the court found any of the taxes illegal, the judgment should have been for the plaintiff, conditioned upon his paying the legal tax, not that he had no case in court, we can not better reply than by using the forcible language of Mr. Justice MILLER in *Bailey* v. *Atlantic, etc., R. R. Co.*, C. L. J., vol. 1, 502." The court then quotes from the opinion in that case, and denies the doctrine contended for by counsel.

In our own case of *City of South Bend* v. *University of Notre Dame*, 69 Ind. 344, the complaint alleged a tender, and that the money had been paid into court ; but the sum was not equal to the amount due, and the complaint was held bad, the court saying : " The appellee could maintain an action to be relieved of this illegal tax, but not until payment or a tender of payment had been made of that amount of the tax which had been legally assessed."

In another case the rule was thus stated : "As his complaint does not show any such payment or tender, it is bad on the demurrer thereto." *Mullikin* v. *Reeves*, 71 Ind. 281. So, in *Michigan Mutual L. Ins. Co.* v. *Kroh*, 102 Ind. 515, MITCHELL, J., said : "As the complaint avers that the amount tendered was more than the amount of the taxes assessed against the lot, together with the costs, interest and charges thereon, and as it is averred that the tender was kept good, and the money brought into court to be at its disposal, the complaint was sufficient, and the demurrer was correctly overruled."

We might add to these quotations, but we deem them sufficient to show that the rule has always been that a tender, and not a mere offer, must be made in such cases as this ; and once it is granted that a tender must be made, then the long established rules upon the subject must be applied. If a tender is necessary, it must be an effective one. In a very

emphatic manner the doctrine that in equity, as well as at law, the money must be brought into court, was asserted in *Conwell* v. *Claypool*, 8 Blackf. 124. The appellee in that case filed a bill to enforce the specific performance of a contract; the appellant answered, among other things, a tender, and the court, on motion, struck out that part of the answer because the money was not brought into court. DEWEY, J., in delivering the opinion of the court, said: "And that part respecting the tender was also properly rejected, because the money tendered was not brought into court."

For more than forty years, therefore, the principle we affirm has been recognized in this court, for the decision from which we have quoted was made in 1846. We do not refer to that case as affirming that in all suits in equity there must be a strict tender, but we do refer to it for the purpose of showing that it has always been the rule in this State that where justice requires it a strict tender will be exacted.

If the appellees' counsel are right in asserting that what they call the equity rule applies, then no more than an offer was required at any time; for where the rule applies at all, it dispenses with a tender entirely. If an offer is all that need be made before the suit is commenced, then all our cases, from the beginning of the long line to the end, are radically wrong.

The counsel's argument proves too much, if, indeed, it proves any proposition relevant to the point in dispute. We suppose it quite clear that, under our decisions, a mere offer to pay, without a tender of the money, would not be sufficient, and if not, then the equity rule, as it is called by counsel, can have no application. We regard as clearly true this proposition: If an offer is sufficient, only an offer need be stated in the complaint; if a tender is required, then a tender must be averred and proved. As this case is one requiring a tender, and not an offer, it comes within the general rules applicable to tenders, and must be tested by them. In other words, if a tender is required it must be such as the law re-

quires, and if required in the first instance, it must, in such a case as this, be kept good by bringing the money into court.

No injustice can possibly result from the rule that where the amount is conceded to be unconditionally due the money tendered must be paid into court. The case before us is utterly unlike the imaginary cases put by counsel, for here a known sum is admitted to be unconditionally due. On what principle of right can the appellees proceed while holding in their own hands the money they concede to be due the appellants, and where, as long as they do withhold it, they are, upon their own theory, in possession of what in equity and good conscience does not belong to them?

If there was an accounting to be had before the amount could be ascertained, we should have a different case. If the amount was shown to be uncertain and incapable of being made certain without judicial assistance, the case would be very different. Doubtless, on a proper showing in a proper case, an offer to pay when the decree is entered will excuse a strict tender. But this is not such a case. So, too, a strict tender might be equitably dispensed with where the decree will give immediate title, and no sale is required to enforce the lien, but no such case is before us. It is probably true, that if a plaintiff should bring into court what he admits to be due, he would not be defeated if it should turn out that he was mistaken as to the amount of the lien; but where he admits that, upon his own theory, a known and certain amount is unconditionally due, he ought in equity to bring it into court. If he does not do this, he holds in his own hands what he confesses belongs in equity to another. If there was a condition, or a doubt as to the legal obligation to pay, it might, perhaps, be otherwise; but where there is no condition, and no doubt that nothing short of payment will discharge the lien, the tender should be kept good. But, as said in *Lancaster* v. *DuHadway, supra,* "though it was tendered and refused, it is still unpaid." If the money is

due unconditionally and is unpaid, the equitable course is to bring it into court.

The case before us requires that the money should be paid into court, and to the case now before us our decision is confined. Beyond that case we do not go.

Petition overruled.

Filed March 7, 1888.